WILLIAM J. LAGE, Appellant, v. POTTAWATTAMIE COUNTY et al., Appellees.

No. 45909.

AUGUST 11, 1942.

REHEARING DENIED NOVEMBER 27, 1942.

John R. DeWitt, of Griswold, George H. Mayne and George H. Mayne II, both of Council Bluffs, for appellant.

Roy W. Smith, County Attorney, Addison C. Kistle, Assistant County Attorney, both of Council Bluffs, LeRoy Johnson, County Attorney, and Paul W. Richards, both of Red Oak, for appellees.

STIGER, J.— Plaintiff's petition reads as follows:

"Comes now the plaintiff and for cause of action against the above named defendants alleges and avers:

"That the plaintiff is the owner in fee of the following described real estate to-wit:

"The Southwest Quarter of Section 36 and the Southeast Quarter of the Southeast Quarter of Section 35 in Township 74, Range 38, West of the 5th P. M. Pottawattamie County, Iowa.

"That the Nishnabotna River runs along the West line of said southwest quarter of Section 36 through a drainage ditch duly constructed and maintained by the Nishnabotna drainage ditch.

"That the highway along the south line of plaintiff's land is an inter-county highway located upon the dividing line between Montgomery County and Pottawattamie County, Iowa, and is under the joint control and supervision of the Board of Supervisors of said counties.

"That during or about the year 1938 by joint resolutions of the Board of Supervisors of said counties, it was provided for the raising of said road and the plans were adopted and approved for said work by the Boards of Supervisors of both counties and that by the plan, as adopted and carried out, a borrow pit was dug out and constructed along the north side of said road which cut through the banks of the Nishnabotna drainage ditch to the depth of approximately ten feet.

"That prior to the doing of said work, the land of the plaintiff had been fully protected by the natural and artificial banks from overflow of the Nishnabotna River and was free from overflow from any ordinary high water in said river and that good crops were continuously raised thereon and that at the time of the doing of the road work, herein complained of, said

946

land was of the reasonable market value of one hundred twenty-five dollars per acre.

"That by reason of the cutting of the bank of said river and by the digging of the borrow pits along said road the water from said river in time of ordinary flood or high water was permitted and caused to run through the borrow pits on the north side of said road on to plaintiff's land resulting in an over flow of said land at all times of ordinary high water in said river and that as the direct, necessary and proximate result of the cutting of said protecting banks by said borrow pit, plaintiff's land has ever since been subjected to frequent and periodic over flow from said river totally destroying the value of a large portion of said land for cultivation or agricultural purposes.

"That as a further, direct, necessary and proximate result of the cutting of said borrow pits, a large amount of silt and debris has been washed and carried upon the plaintiff's land by the flooding of the water from said borrow pits causing the land to be filled in by dirt, trash and debris to a depth of four feet over a considerable area thereof and that said filling in of said land has caused an obstruction and change in the natural drainage of said land preventing the surface water, which would previously drain off of said land in a southerly direction, from draining off said land and thereby causing the surface water to collect and stand upon the land to the north of said fill, thereby rendering said land unfit for cultivation and depreciating the value of said land.

"That the over flow of said land and filling thereof, as above complained of, was reasonably and necessarily to be anticipated as the result of the cutting of said protective bank of the river by said borrow pits and the direct and proximate consequence thereof and constituted a taking of said land to the extent of the depreciation of the value of said land resulting therefrom as hereinafter set out.

"That at the time of the cutting of the banks of the Nishnabotna River by said borrow pit, as above set out, plaintiff's land, as herein described, was free from over flow from any ordinary high water in the Nishnabotna river and that good crops had been continuously raised thereon for many years prior thereto,

and that said land was of the reasonable market value of one hundred twenty-five dollars per acre.

"That as the direct, proximate and necessary consequence of the cutting of the protective banks of the Nishnabotna river, as above set out, the said land was subjected to frequent and periodic over flow from said river and the consequent deposit of silt thereon thereby depreciating the market value thereof to the extent and in the sum of ninety dollars per acre, directly resulting in a taking of said land to the extent of the depreciation of the market value thereof to-wit in the amount of eighteen thousand dollars.

"That no condemnation proceedings were instituted by defendants at the time of digging of the borrow pit and the road construction hereinbefore set out and that plaintiff is entitled to compensation by reason thereof in the sum of eighteen thousand dollars no part of which has been paid.

"WHEREFORE, plaintiff prays judgment against the above named defendants in the sum of eighteen thousand dollars on Count 1 as above set out and for interest and costs."

Count 2 asks judgment for loss of and damage to crops.

Complying with a ruling sustaining in part defendants' motion for more specific statement, plaintiff further stated:

"That prior to the cutting of the protecting bank of the Nishnabotna drainage ditch as alleged in plaintiff's original petition, this plaintiff entered into a contract with defendants to sell to defendants 'borrow dirt to an average depth of 3 feet' on a strip of land 50 feet in width adjoining the inter-county highway described in plaintiff's original petition, on the North side, said strip of land being 2700 feet in length and containing approximately 3.1 acres, said borrow dirt being purchased for the purpose of building up and raising said inter-county road, and that the borrow pit was dug and constructed both on the roadway and on the strip of land above described. * * *

"The defendants paid under the aforesaid contract for the borrow dirt from the aforesaid 50 foot strip of land the sum of approximately $310.00."

For further amendment to his petition, and as additional matter not required to be set out under the aforesaid order of the court, plaintiff stated:

"That the cutting of the protecting bank of said Nishnabotna drainage ditch as alleged in plaintiff's original petition was unlawful and in violation of the provisions of Sections 7579 and 7580 of the Code of Iowa.

"Wherefore plaintiff reaffirms the prayer of his original petition."

The demurrer to the petition reads as follows:

"1. That the facts stated in said petition and amendment do not entitle the plaintiff to the relief demanded in this:

"(a) Pottawattamie County and Montgomery County are involuntary corporations organized for governmental purposes and as a matter of law said Counties are not liable for trespasses or other torts committed in the construction of a public improvement.

"(b) There is no legal liability on Pottawattamie County or Montgomery County for damages resulting by reason of negligence or otherwise in the improvement of public highways.

"(c) That as a matter of law neither Pottawattamie County nor Montgomery County is liable in damages for the acts complained of in said petition and amendment.

"(d) That said defendants have paid to said plaintiff any and all amounts due him for the taking of his property, and for damage done to plaintiff's property, if any; and that nothing further is now due this plaintiff. That the contract alleged to have been entered into by plaintiff and defendants has been fully executed and performed, and that nothing remains due plaintiff from defendants.

"(e) That it appears from said petition the matter herein involved is an executed contract, which has been performed and fulfilled, and that all of the terms thereof have been fulfilled and completed, and that the plaintiff is therefore estopped from making further claim against these defendants."

I. The petition stated a cause of action and the court erred in sustaining the demurrer. Article I, section 18 of the

Constitution of the State of Iowa and the Fifth Amendment to the Constitution of the United States provide that private property shall not be taken for public use without just compensation.

We will first consider the issues raised by subsections a, b, and c of the demurrer.

When a public structure directly, naturally, and necessarily results in the flooding or overflowing of private property, there is a taking of property within the meaning of the Constitution.

The plan followed by defendants under which the public highway was completed provided for the cutting of the banks of the drainage ditch, and the completed project directly, immediately, and necessarily caused an intermittent overflow of plaintiff's land, resulting in an invasion of plaintiff's property rights and constituting a taking of property for which he is entitled to just compensation. The damages to plaintiff's land were not the indirect, consequential result of the public improvement which directly and substantially interfered with plaintiff's property rights.

The fact that defendants were performing their duty in improving the roadway does not relieve them of their obligation to pay just compensation for the taking.

This court has held that there may be a taking within the contemplation of the Constitution without an actual invasion or direct physical appropriation of private property. Nalon v. City of Sioux City, 216 Iowa 1041, 250 N. W. 166.

In Pumpelly v. Green Bay & Mississippi Canal Co., 13 Wall. (U. S.) 166, 177, 80 U. S. 166, 177, 20 L. Ed. 557, 560, the court said:

"The argument of the defendant is that there is no *taking* of the land within the meaning of the constitutional provision, and that the damage is a consequential result of such use of a navigable stream as the government had a right to for the improvement of its navigation.

"It would be a very curious and unsatisfactory result, if in construing a provision of constitutional law, always understood to have been adopted for protection and security to the

rights of the individual as against the government, and which has received the commendation of jurists, statesmen, and commentators as placing the just principles of the common law on that subject beyond the power of ordinary legislation to change or control them, it shall be held that if the government refrains from the absolute conversion of real property to the uses of the public it can destroy its value entirely, can inflict irreparable and permanent injury to any extent, can, in effect, subject it to total destruction without making any compensation, because, in the narrowest sense of the word, it is not *taken* for the public use.

"Such a construction would pervert the constitutional provisions into a restriction upon the rights of the citizen, as those rights stood at the common law, instead of the government, and make it an authority for invasion of private right under the pretext of the public good, which had no warrant in the laws or practices of our ancestors. * * *

"We are not unaware of the numerous cases in the State courts in which the doctrine has been successfully invoked that for a consequential injury to the property of the individual arising from the prosecution of improvements of roads, streets, rivers, and other highways, for the public good, there is no redress; * * * But we are of opinion that the decisions referred to have gone to the uttermost limit of sound judicial construction in favor of this principle, and, in some cases, beyond it, and that it remains true that where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution, and that this proposition is not in conflict with the weight of judicial authority in this country, and certainly not with sound principle."

In United States v. Lynah, 188 U. S. 445, 470, 23 S. Ct. 349, 357, 47 L. Ed. 539, 548, the court, in affirming a judgment for plaintiff in error for compensation for the overflow of his lands, in referring to the case of Pumpelly v. Green Bay & Mississippi Canal Company, supra, said:

"Reference was also made to the case of Sinnickson v.

Johnson, 2 Harr. (17 N. J. Law) 129 [34 Am. Dec. 184], in respect to which it was said: 'The case is mainly valuable here as showing that overflowing land by backing the water on it was considered as "taking" it within the meaning of the principle.' Again, on page 179, it was said: 'But there are numerous authorities to sustain the doctrine that a serious interruption to the common and necessary use of property may be, in the language of Mr. Angell, in his work on Water Courses, equivalent to the taking of it, and that under the constitutional provisions it is not necessary that the land should be absolutely taken.' "

In United States v. Cress, 243 U. S. 316, 328, 37 S. Ct. 380, 385, 61 L. Ed. 746, 753, it is stated:

"There is no difference of kind, but only of degree, between a permanent condition of continual overflow by backwater and a permanent liability to intermittent but inevitably recurring overflows; and, on principle, the right to compensation must arise in the one case as in the other."

The court further stated:

"It is true that in the Pumpelly Case there was an almost complete destruction, and in the Lynah Case a complete destruction, of the value of the lands, while in the present case the value is impaired to the extent of only one-half. But it is the character of the invasion, not the amount of damage resulting from it, so long as the damage is substantial, that determines the question whether it is a taking."

In Jacobs v. United States, 290 U. S. 13, 16, 54 S. Ct. 26, 27, 78 L. Ed. 142, 143, 96 A. L. R. 1, the court stated:

"A servitude was created by reason of intermittent overflows which impaired the use of the lands for agricultural purposes. 45 F. (2d) p. 37; 63 F. (2d) p. 327. There was thus a partial taking of the lands for which the Government was bound to make just compensation * * *."

See, also, Hurley v. Kincaid, 285 U. S. 95, 52 S. Ct. 267, 76 L. Ed. 637; Portsmouth Harbor Land & Hotel Co. v. United States, 260 U. S. 327, 43 S. Ct. 135, 67 L. Ed. 287; 18 Am. Jur. 759.

Defendants, to sustain the ruling on the demurrer, rely primarily on the following cases: Bedford v. United States, 192 U. S. 217, 225, 24 S. Ct. 238, 240, 48 L. Ed. 414, 417; Sanguinetti v. United States, 264 U. S. 146, 44 S. Ct. 264, 68 L. Ed. 608; Talcott Bros. v. City of Des Moines, 134 Iowa 113, 127, 109 N. W. 311, 316, 12 L. R. A., N. S., 696, 120 Am. St. Rep. 419; Pillings v. Pottawattamie County, 188 Iowa 567, 572, 176 N. W. 314, 316; Lingo v. Page County, 201 Iowa 906, 208 N. W. 327.

In none of the cited cases was the invasion of private property the direct result of the public structure.

In the Bedford case, supra, the court states that it is distinguishable from the cases of United States v. Lynah and Pumpelly v. Green Bay Co., supra, stating:

"In both cases, therefore, it was said that there was an actual invasion and appropriation of land as distinguished from consequential damage. In the case at bar the damage was strictly consequential. It was the result of the action of the river through a course of years."

Talcott Bros. v. City of Des Moines, supra, was an action to recover damages caused by bringing a street to grade. The court, in holding that the damage to plaintiff was incidental and indirect, states:

"It is in this view that courts in giving construction to the Constitution have held almost universally that there can be no recovery for indirect or consequential damages resulting from a work of public improvement. As applied to such cases, and to maintain a harmonious balance, the Constitution must be construed to mean not only that the taking must be direct, but it must amount to an actual invasion and appropriation of the abutting property or of some part thereof in such manner as to deprive the owner of the use thereof, * * *."

Pillings v. Pottawattamie County, supra, was an action for damages consequent on the improvement of the highway by cuts and fills. A demurrer to the petition was sustained in part. The court recognized the rule "that the liability of the state or municipality for injury to land by the improvement of a public

way does not extend to or include indirect or purely consequential damages, * * *.'' ·

On page 574 of 188 Iowa, page 317 of 176 N. W., the court quotes with approval from the case of Selden v. City of Jacksonville, 28 Fla. 558, 10 So. 457, 14 L. R. A. 370, 29 Am. St. Rep. 278, as follows:

" 'An original purchaser of an abutting lot, and all subsequent purchasers, take with the implied understanding, or as tacitly agreeing, that the public shall have the right to thus improve or alter the street so far as may be necessary for its use as a street, and that they can sustain no claim for damages resulting to their lots or property from the impairment or destruction of such incidental rights, as a mere consequence from the use or improvement of the streets as highways.' ''

In Sanguinetti v. United States, 264 U. S. 146, 149, 44 S. Ct. 264, 265, 68 L. Ed. 608, 610, liability was denied where it did not appear that the flooding was attributable directly, in whole or in part, to the improvement, rather than to natural conditions.

The court stated:

"Under these decisions [Pumpelly, Lynah, Cress, supra] and those hereafter cited, in order to create an enforceable liability against the Government, it is, at least, necessary that the overflow be the direct result of the structure, and constitute an actual, permanent invasion of the land, amounting to an appropriation of and not merely an injury to the property. These conditions are not met in the present case. * * * It was not shown that the overflow was the direct or necessary result of the structure * * *.''

■ II. Defendants also claimed that the contract included the dirt in the dikes and banks of the drainage ditch; that they paid plaintiff $310 for the borrow dirt; that the contract had been fully performed and that there was nothing further due plaintiff.

The court, in ruling on the demurrer, held that:

"If the borrow pit was dug through the dike and was con-

structed on both the right of way of the highway and on the strip of land purchased, then it follows that the parties by the terms of the contract must have contemplated that the borrow pit would be constructed through the dike.''

We cannot agree with the learned trial court's ruling or the position of defendants.

Whatever interest plaintiff had in the dikes and banks was subject to the rights of the drainage district and they were not subject to sale and purchase for the purpose of providing dirt to raise the grade of the road. The parties apparently recognized this fact in excluding 90 feet ''out for river.''

The only reasonable construction of the contract is that defendants paid $310 for plaintiff's private property which he owned in fee, that is, a strip of land 50 feet wide and 2,700 feet long, and that the dikes and banks of the drainage ditch were not included in the sale of the ''borrow pit.''

It is quite obvious the parties did not contemplate that the sum of $310 for 3.1 acres would include damages to plaintiff's land that would necessarily accrue by cutting through the banks and flooding the property.

Plaintiff, in the amendment to his petition, states that the cutting of the banks of the drainage ditch violated the provisions of sections 7579 and 7580 of the 1939 Code. Section 7579 provides that any person who shall willfully injure any ditch, drain, or other drainage improvement shall be liable to the person or persons owning or possessing the lands for which such improvements were constructed in double the amount of damages sustained by such owner in possession. Section 7580 provides that any person who, without legal authority, diverts or impedes any ditch, drain, etc., shall be deemed guilty of a misdemeanor.

As plaintiff does not seek recovery against defendants under the provisions of section 7579, it is unnecessary for us to discuss these statutes.

Defendants state:

''This contract of sale was nothing more than a short cut for condemnation proceedings and has the same force and effect as if this borrow pit had been acquired by condemnation. It is

a universal rule that in condemnation proceedings the damages are to be assessed once for all, and when once assessed, they include all the injuries which may result for all time to come from the construction and operation and use of the particular public improvement.''

Section 7422, appearing in chapter 353, 1939 Code, entitled ''Levee and Drainage Districts,'' states that:

''The drainage of surface waters from agricultural lands or the protection of such lands from overflow shall be presumed to be a public benefit and conducive to the public health, convenience, and welfare.''

This chapter was passed under the police power of the state for the public welfare. The highway and the drainage ditch are devoted to public use. Defendants assume in argument they would have the right to condemn the banks of the drainage ditch for road purposes. We doubt the accuracy of this assumption.

As stated in 29 C. J. S. 861, section 74:

''As a general rule, property already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by necessary implication, mere general authority to exercise the power of eminent domain being in such case insufficient; and this is so whether the property was acquired by condemnation or by purchase.''

However, defendants acquired the property by contract and not by condemnation proceedings and the determination of their rights in this division of the opinion rests on a proper construction of the contract.

III. We do not agree with defendants' contention that plaintiff failed to challenge all of the grounds of the demurrer and that his assignments of error referred to findings of the trial court rather than to its ruling on the demurrer. Defendants' motion to dismiss the appeal is overruled.—Reversed.

WENNERSTRUM, C. J., and SAGER, GARFIELD, BLISS, MILLER, and MITCHELL, JJ., concur.