LEONA YOUNG, appellee, v. TULA T. MARLAS, individually and as guardian of CHRIST T. MARLAS, a minor, appellee, and MORRIS LUBIN et al., dba LUBIN'S PHARMACY, appellants.

No. 47945.

(Reported in 51 N.W.2d 443)

February 5, 1952.

Messer, Hamilton, Cahill & Bartley, of Iowa City, for appellants and defendant-appellee.

Borchart & Borchart and D. C. Nolan, all of Iowa City, for plaintiff-appellee.

MULRONEY, J.—On May 5, 1950, Leona Young, a nineteen-year-old elevator operator in Iowa City, was walking on the sidewalk in front of Lubin's drugstore. She was cut and injured when the transom glass above the display window fell and shattered on the sidewalk beside her. In her suit against the owners and lessees of the drugstore building she relied upon the doctrine of res ipsa loquitur. The defendants denied that they were guilty of any negligence in the construction, installation or maintenance of the transom glass, and denied negligence on their part which caused plaintiff's injuries and alleged any injuries plaintiff received were the result of "atmospheric conditions". (interpreted by the court to mean an act of God) then and there existing over which defendants had no control. The answers also alleged plaintiff was guilty of contributory negligence and "the doctrine of res ipsa loquitur or general negligence has no application to this case." The jury returned a verdict for plaintiff against the lessees only, in the sum of $8687.15, and the latter appeal, with this statement of four errors: "(1) that the court erred in overruling defendants' motion for directed verdict made at the close of plaintiff's evidence and renewed, with additional grounds, at the close of all of the evidence; (2) that the court erred in overruling the appellants' motion for judgment notwithstanding the verdict, which motion is based on the refusal of the court to direct a verdict on all the grounds stated in those motions; (3) that the court erred in overruling defendants' exceptions to the instructions to the jury and particularly Instruction No. 11, pertaining to the application of res ipsa loquitur; (4) that the court erred in overruling appellants' motion for new trial generally, and particularly ground ten thereof, for the reason that the verdict of the

jury was so excessive that it could only be the result of passion and prejudice."

Rule 344(a)(3), R. C. P., requires that the "errors * * * shall be separately stated and numbered." Such general assignments as defendants make do not comply with the rule. They do not necessitate our review of all of the grounds of the motions or all of the instructions to the jury. Price v. McNeill, 237 Iowa 1120, 24 N.W.2d 464.

I. The status of the case at the close of plaintiff's evidence was what might be called the typical case for the application of the doctrine of res ipsa loquitur. Mayes v. Kansas City Power & Light Co., 121 Kan. 648, 249 P. 599. Leona Young testified she was the elevator girl at Aldens Retail Store, about a half a block from Lubin's drugstore. She said she left Aldens about three o'clock with James Miller, intending to spend her ten-minute rest period drinking coffee at Lubin's. She said there was a wind blowing but she had no difficulty in walking and there were other people on the streets. When they arrived in front of Lubin's she heard a loud crack and she and Miller ran toward the street. She said the glass fell out of the Lubin store, hit the sidewalk and flew up and cut both of her legs. The rest of her testimony consists of the extent of her injury, about which more will be said later.

James Miller, also an employee of Aldens, described the trip to Lubin's with Leona. He heard the crack of glass as they arrived in front of Lubin's, saw the glass coming down, and heard it shatter on the sidewalk. He saw the cuts and gashes on Leona's legs and he carried her first into the drugstore and then across the street to a doctor's office. He said, "There was a wind blowing that afternoon but there was no definite difficulty in walking. We could keep our feet well enough. There was not a large wind enough to blow a person off their feet. We had no difficulty except to hold our coats shut. We did not have to fight the wind or work our way into it." He said he passed Lubin's every day after he started work at Aldens in September 1949 and he had a "vivid impression" that he had seen a corner broken out of one window and a red rag stuffed in the hole. Plaintiff's other evidence tended to establish defendants' control over the building from which the glass fell, the sufficiency of which is not questioned on this appeal.

II. Res ipsa loquitur is a name for a legal principle which permits an inference of defendants' negligence upon proof that establishes (1) defendants' exclusive control and management of the instrumentalities causing the injury, and (2) the occurrence was such as in the ordinary course of events would not have happened without negligence on the part of defendants. Eaves v. City of Ottumwa, 240 Iowa 956, 38 N.W.2d 761, 11 A. L. R.2d 1164, and cases there cited. Defendants do not argue that plaintiff's evidence failed to establish the two basic facts upon which the doctrine of res ipsa loquitur is rendered applicable. They argue the first two assignments of error in one division. Quite often in this argument defendants assert the doctrine of res ipsa loquitur is not applicable to this case. But nowhere in the argument do defendants contend that the motion for directed verdict at the close of plaintiff's case should have been sustained on the ground plaintiff had failed to make out a prima facie case for the application of the doctrine of res ipsa loquitur. Defendants state in this single argument under the first two assignments "that the time to tell whether or not a prima facie case is made which permits an inference [of defendants' negligence] is after all of the evidence is in, not at the close of plaintiff's evidence." The time to determine whether a prima facie case is made is at the close of plaintiff's testimony. Such a prima facie case under the doctrine of res ipsa loquitur was clearly made in this case. Defendants are really contending their evidence rebuts the possible inference of their negligence as a matter of law. Perhaps there are cases where, after a prima facie case of permissible inference of negligence has been made out by plaintiff's testimony, a verdict can be directed because of the strength of defendants' explanatory testimony. No prior decision of this court reached such a conclusion. Larrabee v. Des Moines T. & A. Co., 189 Iowa 319, 178 N.W. 373, and Ruebel Bros. v. American Exp. Co., 190 Iowa 600, 180 N.W. 658, indicate the issue would always be for the jury after the prima facie case was established by plaintiff's testimony. In Larkin v. Chicago G. W. Ry. Co., 118 Iowa 652, 657, 92 N.W. 891, 893, where it was admitted plaintiff made out a prima facie case by proof of an accident and defendant contended its evidence affirmatively established its right to a directed

verdict, we held otherwise and observed: "To say the least, it should require a peculiarly strong and conclusive array of proof to justify the court in withdrawing such an issue from the jury."

III. Defendants' evidence consisted of the manner of installation of the glass panels, their general observation of the condition of the panels up to the time they fell out, and the velocity of the wind on the day of the accident.

The contractor who installed the store front about seventeen years before the accident described the manner in which the three transom glass panels were installed. These panels were about one-fourth inch thick and about three feet high and seventy-five inches long and they were set in wooden sills just below the I-beam supporting the brickwork and just above the large display window. It is enough to say he testified the glass panels were set on wood blocks with a piece of leather attached to allow for expansion and metal clips at intervals of ten inches. In general, he said the installation is the same method of installation that is used and approved today. The contractor who boarded up the opening after the panels fell out on May 5 testified as to their difficulty in working during the high wind. He said the sashes and sills were all in place and the only thing out of place was the moulding at one end which was hanging down. Both contractors said this moulding around the edge of the glass has nothing to do with holding the glass in place.

The testimony of Morris Lubin was that "at no time was there a crack or hole in any of the glass panels and at no time was there a rag stuffed in any hole in the glass." The store proprietors testified the glass panels were often cleaned and washed by schoolboy employees. These boys did not at any time report the glass was cracked or damaged.

The government weather observer at the Iowa City airport, who had been measuring wind velocity there since 1941, testified for defendants. He said he measured the wind velocity by the instrument located on top of the United Airlines hangar at the Iowa City Municipal Airport about a mile and a half from the drugstore. He gave the wind velocity on May 5, 1950, for every half-hour reading from 10:28 a.m. to 5:30 p.m. This showed a south wind of 34 m.p.h. velocity at 10:28 a.m., gradually shifting to the

southwest and rising to 75 m.p.h. at 1:30 p.m., then back to 70 m.p.h. at 2:30 p.m., then 78 m.p.h. velocity or the high at 3 p.m., then dropping to 63 m.p.h. at 3:30 p.m., and finally to 62 m.p.h. at 5:30 p.m., with one reading at 4:30 p.m. of 74 m.p.h. He guessed there might be a differential of twenty per cent between the readings at the airport and the corner at Lubin's drugstore because of frictional differences and obstructions. He remembered the wind of April 11, 1945, which blew the airport hangar down. He was on duty at that time and he said the velocity of that wind, which was of short duration, was 75 m.p.h.—evidently the previous high recorded by him at the airport.

Four old settlers in Iowa City testified as to the wind on May 5, 1950. Two of them said they could not remember a stronger wind. One of defendants' witnesses, S. T. Morrison, who was seventy-two years old and who had lived in Iowa City all his life, said: "I have seen other winds in this area which I thought were harder, but not of as long duration." Dean Teeters, who had spent fifty-six of his eighty-four years in Iowa City, testified for defendants and he said when he was mayor (1943 to 1947) they often had to contend with trees blowing over and blocking traffic. Of the wind on May 5, 1950, he said: "We may have had windstorms in Iowa City during my time of substantially the same force, but I don't remember any windstorm blowing continuously for such a long period."

Evidence of windstorm damage was introduced, presumably to show the intensity of the wind on the fifth of May. Such evidence was probably admissible, but it would seem it would have little probative value unless it was confined to similar occurrences as the one involved or, if not so confined, that the conditions were substantially the same. 65 C. J. S., Negligence, section 234(3); DeCicco v. Marlou Holding Co., 137 N. J. L. 186, 188, 189, 59 A.2d 227, 229. In the last cited case, where a passer-by on a sidewalk in Atlantic City was killed when a coping fell from a roof, it was held "testimony as to damage sustained by other buildings in Atlantic City with particular attention to damage to tile coping" was admissible "to demonstrate a storm of such unusual severity as to negative failure to use due care in anticipating it."

Here there is not any evidence that the May 5 wind blew out

any other plate glass in Iowa City. In fact there is no evidence that it blew out any glass in the business section of the city. The manager and a glazier for the Pittsburgh Plate Glass Company in Iowa City testified that some large plate glass in the business section shifted and later had to be reset. The glazier said two glasses went out of the doors at the Kelley Motor Company and one out of the transom at the Iowa State Bank & Trust Company. He did not know whether these glasses were blown out or the doors and transom slammed in the wind, shattering the glass. He testified he was able to replace these glasses on May 5, finishing with the transom in the bank building about four o'clock in the afternoon. He said he replaced a great deal of window glass in the residence section during the two or three days following May 5, but the record is silent as to whether any other plate glass had to be replaced on, or during a few days after, May 5. The glazier testified that window glass is thinner than plate glass and it is set in putty. They both said after every windstorm they had numerous calls to replace broken glass.

The contractor who installed the Lubin store front testified the method of installation was, and had been for at least seventeen years, the approved method of installation of plate glass. He further said he installed the large display window (seven feet high) just below the transom panels in exactly the same manner as the smaller transom panels, with metal clips at the same intervals, etc., and this glass was of the same thickness as the transom panels. It is somewhat significant that the wind, which witnesses described as "steady", did not blow out the display window or indeed many other plate glass display windows similarly installed in this approved method and presenting a more vulnerable surface to the wind than the transom panels.

The rest of defendants' storm-damage testimony consists of branches of trees blown down, a few trees blown over—one with a partially rotted trunk—some composition shingles on a new house curled up, a sign 20 by 7 feet installed on the roof of a three-story building blown over, and the F.M. radio tower installed two or three years before on the roof of the four-story college engineering building blown over. There is no testimony as to the manner in which the radio tower was fastened to the roof. It blew over

in the morning before the wind velocity at the airport exceeded 60 m.p.h. Two other radio towers located outside Iowa City were undamaged.

We hold the trial court was right in not directing the verdict for defendants at the close of all the testimony. There was evidence of one reading of wind velocity on the day of the accident at the airport a mile outside of town which was slightly higher than any previous reading at the airport since 1941. But some of defendants' own witnesses said they could remember winds in Iowa City of as great or greater force. Plaintiff and Miller testified there was a wind but they had no difficulty in walking. It was the duty of defendants who controlled the building to take into consideration the effect of such winds as are likely to occur in that area. Of course defendants are not required to guard against extraordinary manifestation of nature, which could not reasonably be anticipated or foreseen, or an act of God. Inquiring as to past events is proper in determining what should have been anticipated. A wind that is slightly higher than any recorded in the past nine years and higher than any that a few residents of the area could ever remember does not establish that wind as an act of God as a matter of law.

IV. Defendants' evidence falls far short of rebutting as a matter of law the inference of negligence permitted under plaintiff's prima facie case. In Feeney v. New York Waist House, 105 Conn. 647, 648, 649, 136 A. 554, 555, 50 A. L. R. 1539, 1541, the suit was for injuries plaintiff suffered when a large glass show window fell upon her as she was walking along Main Street in Hartford. The case was tried to the court under the doctrine of res ipsa loquitur and the trial court held "that the defendant was not negligent * * * and that the sole cause of the fall of the glass was a wind so heavy that such fall would have occurred in any event, irrespective of the construction and care in maintenance of the window. * * *" and the wind "was an act of God." The Connecticut Supreme Court of errors reversed, holding the facts found—"that there was, at the time, a windstorm of unusual severity, during which twenty-six lights of glass were blown out in the vicinity of Hartford * * * which amount of breakage was unusual"—were "not adequate to bring the windstorm in

question within the legal conception of such a manifestation of the forces of nature as would, of itself, as an act of God, exonerate the defendant from liability."

In Sinkovitz v. Peters Land Co., 5 Ga. App. 788, 793, 64 S.E. 93, 95, it is held: "When the plaintiff showed that the pane of glass which struck her fell out of the window of the defendant's building, and that its fall was not caused by the occupants of the suite of rooms, or by the agency of any other person, she had made a prima facie case which should have been submitted to a jury to say whether from the circumstances attending the fall of the pane of glass they would draw the inference that the fall of the glass and her consequent injury was due to the alleged negligence of the defendant company, or was a pure accident, or was attributable to such an extremely high wind as that the casualty might be considered the act of God. The maxim 'res ipsa loquitur' is of limited application, but embodies a perfectly sound legal principle. It is frequently difficult to determine when it can be safely said that the thing speaks for itself. However, the process by which it is to be determined whether the physical facts and circumstances accompanying an injury are such that the act may be said itself to speak the negligence of the defendant is to be worked out by the jury and not by the court."

■ The defense that an injury was the result of an act of God must be specially pleaded. 65 C. J. S., Negligence, section 197. And, as stated in 65 C. J. S., Negligence, section 207, page 964: "Defendant has the burden of proving all issues raised as a matter of affirmative defense, such as that an act of God was the proximate cause of the injury."

Seldom does a defendant having the burden of proof on an issue establish it as a matter of law. Maland v. Tesdall, 232 Iowa 959, 5 N.W.2d 327; Augusta v. Jensen, 241 Iowa 697, 42 N.W.2d 383.

■ The permissible inference of negligence which the jury was entitled to find from plaintiff's prima facie case could only be rebutted by evidence establishing that the wind was of sufficient force to constitute an act of God and also this act of God was the sole proximate cause of the injury. "* * * it is elementary and well settled that the act of God must be the sole and proxi-

mate cause of the injury" (1 C. J. S., Act of God, page 1425) in order to discharge defendants from liability. See also 65 C. J. S., Negligence, section 115.

Defendants in effect argue their evidence was so strong that it established as a matter of law, first, that the wind was of such force that it constituted an act of God, and second, assuming defendants' negligence—permissible under plaintiff's prima facie case—that this negligence did not concur with the act of God to cause plaintiff's injury. We hold it failed to establish such facts as a matter of law; that the court was right in submitting the issues to the jury. Long v. Crystal Refrigerator Co., 134 Neb. 44, 277 N.W. 830; Southern Air.Transport v. Gulf Airways, 215 La. 366, 40 So.2d 787.

V. Defendants' exceptions to the instructions consist of ten numbered paragraphs. In the first paragraph defendants except to the giving of all of the instructions on the ground its motions for directed verdict should have.been sustained. In the succeeding paragraphs specific objections to certain instructions are made "for the reasons heretofore urged" and certain other objections. In paragraph 7 exception is taken to instruction 11 "for all of the reasons heretofore urged" and for the additional reason that "res ipsa loquitur has no place in the submission of this cause under the record made"; and that the record evidence fails to exclude "every other reasonable hypothesis or explanation of the happening other than that of [defendants'] negligence."

In defendants' argument here they complain that in instruction 11 where the court told the jury the defendants would, under certain circumstances, have the duty to go forward with their evidence to rebut the inference of negligence, the court in effect placed on defendants the burden of proving their freedom from, negligence. The complete answer to defendants' argument is that the complaint that is here made is not within the objections or exceptions made before instruction 11 was given to the jury. The same can be said with regard to defendants' contention that instruction 11 was confusing and "permitted guess and conjecture as to its meaning"—complaints which are made for the first time on this appeal. Rule 196, R. C. P., provides an exception to an instruction must specify "the matter objected to and on what

grounds" and "no other grounds or objections shall be asserted. thereafter, or considered on appeal." Defendants took no exception to the contents of the instruction. Actually defendants' objection to instruction 11 was a mere continuation of their contention made in their motions for directed verdict: that the doctrine of res ipsa loquitur was not applicable to the case and the instruction should not have been given because the verdict should have been directed in favor of defendants. Such an exception would not present any issue for review as to the correctness of the contents of the instruction. Nichols v. Kirchner, 241 Iowa 99, 40 N.W.2d 13.

VI. Defendants argue they were entitled to a directed verdict on the ground plaintiff was contributorily negligent as a matter of law "in voluntarily placing herself in a position of danger." This is not listed in defendants' statement of errors relied upon for reversal but evidently defendants feel the asserted error is presented because it was a ground of their motions for directed verdict. Without reviewing all the evidence again, we hold there is no merit in the argument. This was not a day of great catastrophe in Iowa City. It was a windy day but winds are not unknown to Iowa. As far as the record shows it was a day of business as usual. The stores were open. Customers came to the stores, rode in plaintiff's elevator and presumably drank coffee at Lubin's and ate lunch at Whetstone's—at least that is where plaintiff lunched. We cannot believe Lubin's, who were presumably open for coffee business, can be very serious in their contention that a prospective customer was guilty of contributory negligence as a matter of law because she walked to their store to buy a cup of coffee.

VII. Finally, defendants contend the verdict was so excessive that it can only be the result of passion and prejudice and the trial court should have granted its motion for new trial on that ground. The injury consisted of complete severance of the Achilles tendon of plaintiff's left heel, two other lacerations in the region of her left ankle, and six lacerations of the calf of her right leg. She was in the hospital five days and had her foot in a cast for about a month and she used crutches for about two months. She said she suffered much pain at the time of the acci-

dent and still suffered pain, and the doctor said he would presume the injury would be painful but he could not say how long the pain would last, but some slight pain could last for years. She still limped, eight months after the accident, and had difficulty going down steps. The doctor felt she would have some permanent disability. Plaintiff and her doctor said she could not dance and the doctor said she would not be able to do work requiring her to be on her feet for excessively long periods of time.

The evidence of plaintiff's injury, the pain and suffering she endured, and might endure in the future, and the continuing nature of her disability together with the doctor bills in the sum of $311.50 and the hospital bills in the sum of $102.50 and loss of wages (approximately $264) would warrant a substantial award of damages. We hold the verdict rendered was not so excessive as to shock the judicial conscience. Christensen v. Boucher, 237 Iowa 1170, 24 N.W.2d 782. We find no error in the trial court's refusal to grant a new trial on the ground the verdict was excessive. The cause is affirmed.—Affirmed.

THOMPSON, C. J., and BLISS, OLIVER, GARFIELD, and WENNERSTRUM, JJ., concur.

SMITH, J., not sitting.