Glen **PHELPS** et al., Appellants,

v.

**BOARD OF SUPERVISORS OF the COUNTY OF MUSCATINE, Iowa, and County of Muscatine, Iowa, Appellees.**

No. 55713.

Supreme Court of Iowa.

Oct. 17, 1973.

Rehearing Denied Dec. 13, 1973.

Lewis, Stevens & Gillett, Muscatine, for appellants.

Garry D. Woodward, Muscatine, for appellees.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES and UHLENHOPP, JJ.

LeGRAND, Justice.

This is a mandamus action brought by the owners of five parcels of property lying in the flood plain of the Cedar River to exact compensation from Muscatine County for an alleged taking of their land in connection with the construction of a causeway and bridge as part of a highway improvement in that county. The plaintiffs appeal from an adverse judgment. We reverse and remand with directions that a writ of mandamus issue as prayed.

We consider briefly the factual situation upon which a determination of this appeal depends. In 1963, Muscatine County acquired a right-of-way for the construction of a causeway and bridge spanning the Cedar River. Much of the work was completed by 1965, when the Cedar River experienced a flood of major proportions, and all of it was completed by 1969 when another flood occurred along the banks of the Cedar River. Both floods caused plaintiffs' lands to be partially inundated.

Plaintiffs claim the construction of this causeway and bridge, obstructing as it did portions of the Cedar River, caused their lands to be flooded by impeding the free flow of the river. The county counters by claiming the lands had long been subject to flooding and that the construction work cast no additional burden on the property.

The record shows there was flooding on plaintiffs' property during high water periods prior to the construction of the bridge. The real issue, therefore, is whether the new causeway and bridge occasioned a substantially greater degree of flooding than the lands were subject to before.

All witnesses agreed the projection of the causeway and the bridge into the river necessarily impedes the free flow of the stream. The point upon which the case must turn is the *extent* of the obstruction and the related question of whether plaintiffs sustain anything except nominal damage.

The trial court found against plaintiffs because "it is conjectural and speculative when a flood will again come to the Cedar River Valley, how big the flood will be,

how long it will remain on the land of plaintiffs, and how much damage, if any, it will cause the plaintiffs."

From this the court found the rule of "clear and certain legal right to the relief" announced in Claussen v. Perry, 248 Iowa 108, 117, 79 N.W.2d 778, 783 (1956) and other cases was not established, precluding the granting of the writ.

■ I. While we do not quarrel with the rule, we find it inapplicable under this record. Although the time and severity of future floods are unpredictable, we take judicial notice that there will be floods. We cannot agree that plaintiffs, who are admittedly subject to flooding which is certain and inevitable, should be denied compensation because the exact time and precise extent of the events are unknown.

We believe this argument is effectively answered in United States v. Cress, 243 U. S. 316, 329, 37 S.Ct. 380, 385, 61 L.Ed. 746, 753 (1917) by this statement:

"[W]here * * * land is not constantly but only at intervals overflowed, the fee may be permitted to remain in the owner, subject to an easement in the United States to overflow it with water as often as necessarily may result from the operation of the lock and dam for purposes of navigation."

There is convincing evidence to show that following construction of the causeway and bridge, there was *greater* overflow of water onto plaintiffs' lands during floods· which were less severe than prior floods.

This was hotly controverted, and much of the record is taken up with the conflicting testimony of witnesses—both lay and expert—aimed at this important point. The trial court placed considerably more reliance on the expert testimony of Professor Locher than we are willing to do, principally because we find some of his evidence more favorable to plaintiffs than to defendants. He readily conceded, for in-

stance, that the construction work inevitably caused water backup on plaintiffs' land, just as they contended. The question then becomes how much backup and for how long, matters which we feel should not be decided now except to determine if there is a real basis for plaintiffs' claim. We hold there is.

■ It must be remembered we are not here concerned with either the extent of the taking or the amount of damages. These are matters reserved for determination in later condemnation proceedings if the writ of mandamus is granted. Our solely duty now is to determine if there has been a taking in the constitutional sense.

■ Article I, section 18 of the Iowa Constitution provides that "private property shall not be taken for public use without just compensation first being made". The county, of course, does not want title to this land. However, a "taking" does not necessarily mean the appropriation of the fee. It may be anything which substantially deprives one of the use and enjoyment of his property or a portion thereof. Cereghino v. State Highway Commission, 230 Or. 439, 370 P.2d 694, 696 (1962); United States v. Cress, 243 U.S. 316, 328, 37 S.Ct. 380, 385, 61 L.Ed. 746, 753 (1917); Lage v. Pottawattamie County, 232 Iowa 944, 949, 5 N.W.2d 161, 164 (1942) and citations. In the present case, there has been a taking if, as plaintiffs contend, there has been a substantial interference with their use and enjoyment of their property by reason of intermittent flooding.

■ We have held on a number of occasions that mandamus is a proper remedy to compel condemnation when there has been a taking of private property for public use without just compensation. Hagenson v. United Telephone Company, 164 N. W.2d 853, 856 (Iowa 1969); Harrison-Pottawattamie Drainage District No. 1 v. Iowa, 261 Iowa 1044, 1049, 156 N.W.2d

835, 838 (1968) and citations. Perhaps we should also mention here that mandamus is an equitable action under section 661.3, The Code. It is reviewable de novo as provided in Rule 334, Rules of Civil Procedure. Chicago, Burlington & Quincy Railroad Company v. Iowa State Tax Commission, 259 Iowa 178, 180, 142 N.W.2d 407, 408 (1966).

It would serve no purpose to detail the voluminous evidence before us. We have reviewed not only that portion of the record filed with the appendix under Rule 344.1, R.C.P., but also the reporter's transcript of evidence. We conclude plaintiffs are entitled to the writ.

■ In Lage v. Pottawattamie County, supra, we recognized that the construction of a highway in such a manner as to directly, naturally, and necessarily result in flooding adjoining property was a taking thereof within the meaning of section 18 of Article I of our constitution and that just compensation must be made therefore. (See 232 Iowa at 948, 949, 5 N.W.2d at 163, 164).

*Lage* includes an analysis of numerous cases lending support to this conclusion, particularly a number of United States Supreme Court cases upon which we also rely. See Pumpelly v. Green Bay and Mississippi Canal Co., 13 Wall. 166, 80 U.S. 166, 20 L.Ed. 557 (1872); United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539 (1903); United States v. Cress, supra; Jacobs v. United States, 290 U.S. 13, 54 S. Ct. 26, 78 L.Ed. 142, 96 A.L.R. 1 (1933); Sanguinetti v. United States, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608 (1924). We reached the same conclusion in Harrison-Pottawattamie Drainage District No. 1 v. State of Iowa, supra, (see 261 Iowa at pages 1050, 1051, 156 N.W.2d at page 839).

Nor do we believe that the fact the flooding will be intermittent only is at all determinative of the question. While the flooding may only be occasional, there is evidence that the damage from it is permanent. See Renninger v. State, 70 Idaho 170, 213 P.2d 911, 915 (1950) and Tarrant County Water Control and Improvement District v. Fowler (Texas Civ.App.1943), 175 S.W.2d 694, 698; United States v. Cress, supra, 29A C.J.S. Eminent Domain § 117, page 471 (1965).

■ What was said in United States v. Cress, supra, 243 U.S. at 328, 37 S.Ct. at 385, 61 L.Ed. at 753, covers the present situation clearly and succinctly:

"[I]t is the character of the invasion, not the amount of damage resulting from it, so long as the damage is substantial, that determines the question whether it is a taking. * * * There is no difference of kind, but only of degree, between a permanent condition of continual overflow by back water and a permanent liability to intermittent but inevitably recurring overflows; and, on principle, the right to compensation must arise in the one case as in the other. If any substantial enjoyment of the land still remains to the owner, it may be treated as a partial instead of a total divesting of his property in the land. The taking by condemnation of an interest less than the fee is familiar in the law of eminent domain."

For the reasons set out, we hold plaintiffs should have their writ of mandamus.

II. Plaintiffs raise one other issue in their appeal which we should mention briefly although we believe it is rendered moot by what we have already said. Plaintiffs filed their original action in two counts. One sought damages for a tortious invasion of their property; the second count asked for a writ of mandamus. The trial court dismissed the first count on motion prior to trial. Plaintiffs say this was error, pointing to Lage v. Pottawattamie County, supra, which they say authorizes an action for damages under such circumstances. See also Hagenson v. United Telephone Company, supra, 164 N.W.2d at 856.

However, we need not reach that issue here. In Harrison-Pottawattamie Drainage District v. State of Iowa, supra, 261 Iowa at pages 1050, 1051, 156 N.W.2d at page 839, we held that mandamus accompanied by condemnation proceedings affords "an appropriate and efficient remedy" and that mandamus, although an equitable action, leads "to an adequate remedy at law in the form of condemnation proceedings where plaintiff is given opportunity to redress the wrong." We hold that the granting of a writ of mandamus ordering that condemnation proceedings be instituted affords plaintiffs here their full and complete remedy.

The judgment of the trial court is reversed and the cause is remanded with directions that a writ of mandamus issue.

Reversed and remanded with instructions.