**Keith SCHRADER and Lourena Schrader, Appellants,**

v.

**STATE of Iowa and Iowa State Highway Commission, Appellees.**

**No. 56127.**

Supreme Court of Iowa.

Dec. 19, 1973.

Glenn Bradley, Sigourney, and Nolan, Lucas & Nolan, Iowa City, for appellants.

Richard C. Turner, Atty. Gen., Asher E. Schroeder, Sp. Asst. Atty. Gen., and Robert W. Goodwin, Asst. Atty. Gen., for appellees.

Heard before MOORE, C. J., and Le-GRAND, UHLENHOPP, REYNOLD-SON, and McCORMICK, JJ.

UHLENHOPP, Justice.

The question in this mandamus proceeding is whether a constitutional "taking" by the State of Iowa occurred, requiring the State to pursue condemnation proceedings. See Anderlik v. Iowa State Highway Comm'n, 240 Iowa 919, 38 N.W.2d 605.

■ We hear the appeal de novo. We give weight to the trial court's fact findings but are not bound by them. Phelps v. Board of Supervisors of Muscatine County, 211 N.W.2d 274 (Iowa). Both sides introduced substantial evidence. After weighing the proofs, we find the preponderance of the evidence to be as follows.

Just east of Sigourney, Iowa, east-west Iowa Highway 92 crosses north-south Bridge Creek, which has a watershed of 34.5 square miles. Prior to 1967, the bridge over the creek was 70 feet long and 14 feet high and would pass water through at a rate of 3,400 cubic feet per second (cfs). At times of high floods, the bridge would not pass all the water through. The highway was quite low, and at those times water flowed over the highway itself.

Plaintiffs Keith and Lourena Schrader acquired a parcel of land on the north side of the highway west of the creek bridge. The ground sloped up to the west at Schraders' parcel, and Schraders cut into the hill, removed the dirt, and constructed a motel and appurtenant buildings. They did not place an embankment or other protection around their lowered grade to protect it from overflow.

Considerably later, the Iowa State Highway Commission decided to improve Highway 92 in the vicinity of Bridge Creek. One of the Commission's bridge engineers made a study to determine the size bridge needed to handle the water of the creek. He ascertained the maximum flood which had passed that point. Basic information on that subject is given in a report entitled "Magnitude and Frequency of Iowa Floods" published by the United States Department of Interior, which the engineer consulted. He also interviewed local people to ascertain the height that water had risen in the past. He found that the maximum the highway had ever been under water was one foot. From the information

thus obtained and from the size of the existing bridge, the engineer computed the maximum amount of water which had flowed past that point to be 5,800 cfs. The engineer also learned from weather bureau records, which go back to 1896, that the maximum rainfall in this area in a 24-hour period was 5.34 inches, and that Keokuk County has a 1% chance of getting 5.9 inches of rain in 12 hours and a 1% chance of getting 6.8 inches of rain in 24 hours. In addition, he studied the watershed and investigated to determine whether the stream carried ice or drift and whether it was silting up or eroding out. Survey crews ascertained the slope of the creek upstream and down. Armed with this data, the engineer designed a bridge 17.3 feet high and 130 feet long, to handle 8,000 cfs. This would be large enough to handle any known flood which had occurred, plus a margin of 2,200 cfs.

The Commission built the new bridge in 1967. It also straightened the creek to a minor extent at the bridge, which helped to reduce flooding, and it increased the height of Highway 92 starting at about the west edge of Schraders' property and increasing to a maximum of 5.5 feet about a half-mile east. The record contains no evidence of negligence on the part of the Commission.

Three years passed. On the night of August 4 and the morning of August 5, 1970, a rainstorm of unprecedented proportion occurred. The amount of rainfall varied at different places, but it was great in amount throughout the area. A rain gauge at the Elver Strong farm showed that eight inches of rain fell there. A gauge at the Menzo Cheney farm showed 8.7 inches of rain and a gauge on the Willie Herman farm showed 12.6 inches of rain. The flood washed out one 37-foot-long county bridge, built before 1937, and damaged several others. A woman testified that water was higher than the rail above the platform of a county bridge near her home, and that the bridge platform itself was higher than her head. One farmwife testified, "We hadn't had a rain like this because there was water everywhere under the sun. Since we've lived in this area we've had several heavy rains, but nothing like this one." Mrs. Willie Herman testified, "It started to rain around midnight at our place and it really came down. Willie said we are going to get carried away once because it was raining so hard." Willie Herman testified, "We never had a rain like this before, it all came within 12 or 14 hours. . . . I never want to see that rain come again." Elver Strong testified about damage done and stated, "We've never had this kind of rain as long as I've been there in 16 years." Another farmer, James Vittetoe, gave similar testimony. Witnesses described crop and fence destruction, basement water problems, and other damage from the torrential downpour.

The water in the creek bridge area rose, filled the new bridge to capacity, and flowed over the highway. Water flooded the adjacent area and reached a level seven inches deep in Schraders' motel before the flood subsided. Calculations by a Commission engineer showed that 12,000 to 13,000 cfs of water reached the bridge and that quite likely Schraders' motel would have been flooded even if the highway improvement had not been made.

Schraders then brought this suit. The action is not in tort for injuries caused by this particular flood, and we have no occasion to consider what the result would be in such a case. Rather, the suit is to compel the Commission to condemn. Schraders' theory is that had the highway been at its previous elevation, the water would have flowed over the highway and would not have flooded their motel, and that when the Commission elevated the highway, it did not build a large enough bridge to handle this flood. Hence the Commission must condemn.

■ We have considerable doubt Schraders have established their premise that the motel would not have flooded had the improvement not been made. They in-

troduced testimony of an engineer, but the evidence discloses flaws in his testimony and a mistake in his underlying assumption. Moreover, he testified, "I have not attempted to analyze the adequacy of the existing structure as a bridge," and, "I have not put in anywhere near the amount of research or study that would permit me to state what design of bridge I would have chosen for this bridge." But assuming the truth of Schraders' premise, is their conclusion correct that the Commission must condemn because the bridge did not handle the water of August 4 and 5, 1970? This question requires us to answer two other questions. Was the rainstorm of August 4 and 5 an act of God in contemplation of law? If so, must the Commission condemn for the possibility of such a storm?

As to the first question, the trial court believed that this storm was an act of God, and so do we. An act of God, as known to the law, is "such an unusual and extraordinary manifestation of the forces of nature that it could not under normal conditions have been anticipated or expected." 1 Am.Jur.2d Act of God § 3 at 678. This court dealt with the subject in Young v. Marlas, 243 Iowa 367, 51 N.W.2d 443. Referring to Young, the court said this in Oakes v. Peter Pan Bakers, Inc., 258 Iowa 447, 455, 138 N.W.2d 93, 98: "The Young case calls an 'extraordinary manifestation of nature, which could not reasonably be anticipated or foreseen' an act of God and adds, 'Inquiring as to past events is proper in determining what should have been anticipated.'"

Floods which occur from time to time, although infrequently, are not acts of God. Clark v. Cedar County, 118 Neb. 465, 225 N.W. 235; Reichert v. Northern P. Ry., 39 N.D. 114, 167 N.W. 127. The guide has been stated thus: "The test whether or not a flood is such as to be deemed an act of God apparently is whether after considering the laws of hydraulics, the natural formation of the country, ordinarily prevailing climatic conditions, the character of

the stream, its habits and history, to the extent of learning its probable behavior under conditions which experience has shown are likely to recur, and the volume and velocity of tributary streams, a prudent man would have anticipated it." 93 C.J.S. Waters § 20 at 630–631.

The factors just enumerated were examined by the Commission's engineer. He designed a bridge which would accommodate the water which could reasonably be expected, with a substantial margin of safety. The downpour which occurred was far beyond reasonable expectations. We agree with the trial court that it constituted an act of God.

As to the second question, must a public body which constructs an improvement sufficient to take care of events which may reasonably be expected also condemn for the possibility of an act of God which may not reasonably be anticipated? The trial court thought not, and we again agree.

This question turns on when a "taking" occurs, in a constitutional sense, as a result of flooding. The United States Supreme Court dealt with this problem in a series of cases. Pumpelly v. Green Bay & M. Canal Co., 13 Wall. 166, 20 L.Ed. 557 (U.S.); United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539; Manigault v. Springs, 199 U.S. 473, 26 S.Ct. 127, 50 L. Ed. 274; United States v. Welch, 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787; United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746; Sanguinetti v. United States, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608; Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142; United States v. Sponenbarger, 308 U.S. 256, 60 S.Ct. 225, 84 L.Ed. 230; United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789.

Initially the question was whether flooding constitutes "taking" at all. In Pumpelly a dam raised the level of a lake, flooding adjacent land. The court held that *permanent* flooding constitutes taking the same as if the fee had been condemned and said that "where real estate is actually in-

vaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution." 13 Wall. at 181, 20 L. Ed. at 561. Lynah and other cases followed the principle; in Lynah, facilities constructed to improve navigation turned a rice plantation into an irreclaimable bog.

Eventually the Cress case came before the Court. In that case the flooding was *temporary* but *inevitably recurring* from high waters reasonably to be expected. The Court expanded the Pumpelly rule saying, "There is no difference of kind, but only of degree, between a permanent condition of continual overflow by backwater and a permanent liability to intermittent but inevitably recurring overflows; and, on principle, the right to compensation must arise in the one case as in the other." 243 U.S. at 328, 37 S.Ct. at 385, 61 L.Ed. at 753. The Court applied the Cress principle in Jacobs and said, "A servitude was created by reason of intermittent overflows which impaired the use of the lands for agricultural purposes. . . . There was thus a partial taking of the lands for which the Government was bound to make just compensation under the Fifth Amendment." 290 U.S. at 16, 54 S.Ct. at 27, 78 L.Ed. at 143. See also 26 Am.Jur.2d Eminent Domain § 165 at 838; Annot. 128 A. L.R. 1195. Lesser overflows than those in Pumpelly and Cress have been held not to constitute a taking. Manigault v. Springs, supra; Sanguinetti v. United States, supra.

We recently applied the Cress principle of intermittent but inevitably recurring overflows in Phelps v. Board of Supervisors of Muscatine County, 211 N.W.2d 274 (Iowa). There the public body claimed the landowners had not shown a "clear and certain right to relief" because, although floods will recur, the landowners did not prove when the floods will come, how large they will be, the length of time the water will remain, and the damage it will inflict. To this we responded, "We cannot agree that plaintiffs, who are admittedly subject to flooding *which is certain and inevitable,* should be denied compensation because the exact time and precise extent of the events are unknown." 211 N.W.2d at 276 (Iowa) (italics added). See also Lage v. Pottawattamie County, 232 Iowa 944, 949, 5 N.W.2d 161, 163–164 ("When a public structure directly, naturally, and *necessarily* results in the flooding or overflowing of private property, there is a taking" —italics added); Harrison-Pottawattamie Drainage Dist. No. 1 v. State, 261 Iowa 1044, 1048, 156 N.W.2d 835, 837 ("the depositing of silt in the channel would clog and cover the drainage tubes and lateral tile drains emptying into the ditch, destroying the drainage provided by the ditch"); 2 Nichols, Eminent Domain, § 6.23[3] at 6–57 to 6–64 (3d ed.).

In the present case, we have no evidence that the motel will be subject to "intermittent but inevitably recurring overflows" or to "flooding which is certain and inevitable." The evidence is to the contrary. The bridge was designed and built larger than necessary to handle any floods theretofore known or reasonably anticipated. Apparently it functioned satisfactorily during the three-year period after it was built and until this storm. We cannot say the act of God in 1970 will be inevitably recurring or certain and inevitable. By definition, an act of God is one which is *not* within reasonable expectation. 1 Am. Jur.2d Act of God § 1 at 675–676; 1 C.J.S. Act of God at 1425–1426. A public body is not required to condemn or build for such a possibility. See City of Austin v. Howard, 158 S.W.2d 556 (Tex.Civ.App.); Schmutte v. State, 147 Neb. 193, 22 N.W. 2d 691. See also B Amusement Co. v. United States, 180 F.Supp. 386 (Ct.Cl.); North Counties Hydro-Electric Co. v. United States, 151 F.Supp. 322 (Ct.Cl.); 56 Am.Jur. Waters § 32 at 521 ("a person obstructing a natural watercourse by the erection of a dam, embankment, or other structure is not required to build in anticipation of or preparation for floods or

freshets which are not only extraordinary but unprecedented, and cannot reasonably be foreseen, such a flood being in contemplation of law an 'act of God' "); 93 C.J.S. Waters § 20c at 629–630 ("A builder of a bridge, embankment, or other work is not bound to provide against floods of which the usual course of nature affords no premonition").

■ If we were to require a condemnation proceeding to allow damage for a future act of God, how could a trial court admit evidence or instruct on the subject within the established rules of condemnation cases? Whether an act of God will ever occur again is unknown and speculative; unpredictability is its essential nature, whether the phenomenon be a cyclone which blows down a properly constructed bridge or a flood which washes over it. But evidence and instructions on speculative matters are not permitted in eminent domain trials. Randell v. Iowa State Highway Comm'n, 214 Iowa 1, 8, 241 N.W. 685, 689 ("questions of this kind, which ask the witness to enter the field of speculation and conjecture, never should be asked or answered"); Duggan v. State, 214 Iowa 230, 234, 242 N.W. 98, 99–100 ("[M]atters which are speculative, remote, imaginary, contingent or uncertain, and which might be considered by the jury as elements in damage, crept into the record, and the defendants asked an instruction warning the jury not to consider such matters. This instruction should have been given."); Welton v. Iowa State Highway Comm'n, 211 Iowa 625, 636, 233 N.W. 876, 883 (requested instruction proper that jury must disregard "anything which is remote or imaginary or uncertain or speculative").

We hold on the evidence that the flood was an act of God and on the law that the Commission is not required to condemn for such a possibility.

Affirmed.