Erben A. HUNZIKER, Donald M. Furman, R. Friedrich and Sons, Inc., and Buck Construction Company, Inc., Appellants,

v.

STATE of Iowa, Appellee.

No. 93–302.

Supreme Court of Iowa.

July 27, 1994.

Rehearing Denied Sept. 21, 1994.

Robert W. Goodwin of the Goodwin Law Office, Ames, for appellants.

Bonnie J. Campbell, Atty. Gen., Elizabeth M. Osenbaugh, Deputy Atty. Gen., and Michael H. Smith, Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

LAVORATO, Justice.

The issue in this case is whether the district court properly concluded as a matter of law that the plaintiffs were not entitled to compensation on a regulatory taking theory for land they own. We think the district court was correct and we affirm.

The plaintiffs—Erben A. Hunziker, Donald M. Furman, R. Friedrich and Sons, Inc., and Buck Construction Company, Inc.—are land developers. In May 1988 they purchased a fifty-nine acre tract of farm land to develop. The plaintiffs platted the tract as the Second Addition, Northridge Parkway Subdivision.

In May 1990 the plaintiffs sold lot 15 in the addition for $50,000. The buyer—Dr. Jon Fleming—planned to build a home on the lot.

In April 1991 the state archaeologist learned that lot 15 has a Native American burial mound on it. The state archaeologist probed lot 15 and found some human bones. Studies indicated that the burial mound on lot 15 was made between 1000 and 2500 years ago by Native Americans of the Woodland Period.

Pursuant to Iowa Code section 305A.9 (1991), the state archaeologist prohibited disinterment of the burial mound and required a buffer zone around the mound to ensure its protection. Given the size of lot 15, the location of the mound near the center of the lot, and the need for the buffer zone, construction of a house on lot 15 was not feasible. Because of (1) the state archaeolo-

gist's determination, (2) the prohibition against disinterment, and (3) the buffer zone requirement, the city refused to issue a building permit for lot 15.

The plaintiffs refunded the purchase price to Dr. Fleming and took the lot back. The plaintiffs then brought this mandamus action, alleging the State's action amounted to a regulatory taking without compensation. The plaintiffs asked the court to enter a writ of mandamus commanding the State to condemn lot 15 and provide them just compensation for it.

Both parties moved for summary judgment. The district court granted the State's motion and denied the plaintiffs' motion. The court also overruled the plaintiffs' subsequent motions. The plaintiffs appealed.

### I. *Scope of Review.*

■■■ Because mandamus is an equitable action, our review is de novo. *Fitzgarrald v. City of Iowa City,* 492 N.W.2d 659, 663 (Iowa 1992). Mandamus is a procedural device to compel condemnation when there has been a taking of private property for public use without just compensation. *Phelps v. Board of Supervisors,* 211 N.W.2d 274, 276 (Iowa 1973). Mandamus is limited to determining

> whether a factual issue exists that would permit a condemnation commission or a jury on appeal of an award to find an intrusion that produced a measurable decrease in the property's market value. The mandamus court may find the evidence insufficient as a matter of law to compel the summoning of a condemnation commission, but that court is simply not called upon to rule as a matter of law that a taking has occurred. To do so would create an undesirable issue preclusion problem in a later trial of a condemnation proceeding. It is for the condemnation commission or trial jury to fix the loss of value, if any, suffered by the property owner.

*Fitzgarrald,* 492 N.W.2d at 663–64. So our task here is to determine whether the district court correctly determined there was no factual issue that would permit a finding of a compensable intrusion. This, of course, is the same question posed by a motion for summary judgment. *Hasbrouck v. St. Paul Fire & Marine Ins. Co.,* 511 N.W.2d 364, 366 (Iowa 1993).

### II. *Whether There Was a Factual Issue That Would Permit a Finding of a Compensable Intrusion.*

In its summary judgment motion, the State urged, among other things, that the plaintiffs never had a vested property right under statutory or common law to build a house on an ancient burial mound. For this reason, the State argued, no regulatory taking occurred. The district court agreed and entered summary judgment in favor of the State.

A. *Applicable law.* The Fifth Amendment to the federal Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. This provision of the Fifth Amendment is made binding on the states through the Fourteenth Amendment to the federal Constitution. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358, 364 (1980). An Iowa Constitutional provision similarly provides that "[p]rivate property shall not be taken for public use without just compensation first being made...." Iowa Const. art. I, § 18.

■■ "Taking," for purposes of the federal and Iowa constitutional right of just compensation,

> does not necessarily mean the appropriation of the fee. It may be anything which substantially deprives one of the use and enjoyment of his property or a portion thereof.

*Phelps,* 211 N.W.2d at 276.

■■ Here the plaintiffs' claim for compensation is based on what has been referred to as inverse condemnation. Inverse condemnation is

> a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted.

*United States v. Clarke,* 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373, 377 (1980).

Land-use regulation does not effect a taking requiring compensation if it substantially advances a legitimate state interest. *Lucas v. South Carolina Coastal Council,* 505 U.S. ——, ——, 112 S.Ct. 2886, 2897, 120 L.Ed.2d 798, 818 (1992). There are two exceptions. When the regulation (1) involves a permanent physical invasion of the property or (2) denies the owner all economically beneficial or productive use of the land, the State must pay just compensation. *Id.* at ——, 112 S.Ct. at 2900, 120 L.Ed.2d at 821; *Iowa Coal Mining Co. v. Monroe County,* 494 N.W.2d 664, 670 (Iowa 1993).

When the regulation denies the owner all economically beneficial or productive use of the land, the State—under limited circumstances—may resist payment of compensation. The limited circumstances include those instances where it can be shown that the property owner's "bundle of rights" never included the right to use the land in the way the regulation forbids. *Lucas,* 505 U.S. at ——, 112 S.Ct. at 2899, 120 L.Ed.2d at 820; *Iowa Coal Mining Co.,* 494 N.W.2d at 670. Whether or not the property owner's "bundle of rights" included the right to use the land in the way the regulation forbids is to be determined under state nuisance and property law. *Lucas,* 505 U.S. at ——, 112 S.Ct. at 2900, 120 L.Ed.2d at 821.

B. *Analysis.* The Iowa legislature passed Iowa Code section 305A.7 in 1976. In 1978 the Iowa legislature passed Iowa Code sections 305A.9 and 716.5. Section 305A.7 provides in part:

> The state archaeologist shall have the primary responsibility for investigating, preserving and reinterring discoveries of ancient human remains. For the purposes of [this section] ancient human remains shall be those remains found within the state which are more than one hundred fifty years old. . . .

1976 Iowa Acts ch. 1158, § 7 (renumbered as Iowa Code section 263B.7 (1993)).

Section 305A.9 provides:

> The state archaeologist shall have the authority to deny permission to disinter human remains that the state archaeologist determines have state and national significance from an historical or scientific standpoint for the inspiration and benefit of the people of the United States.

1978 Iowa Acts ch. 1029, § 26 (renumbered as Iowa Code section 263B.9 (1993)).

Section 716.5(2) provides that a person commits criminal mischief in the third degree when the person

> [i]ntentionally disinters human remains that have state and national significance from an historical or scientific standpoint for the inspiration and benefit of the United States without the permission of the state archaeologist.

1978 Iowa Acts ch. 1029, § 50.

The plaintiffs do not challenge the findings of the state archaeologist that he made a significant find. Nor do they challenge the authority of the state archaeologist to designate an area as a significant find and to preserve that area pursuant to sections 305A.7 and 305A.9.

The plaintiffs, however, contend that if, in so preserving the find, the state archaeologist deprives the landowner of all beneficial use of the land—as in the case of lot 15—there has been a regulatory taking for which the owner is entitled to compensation. The plaintiffs interpret *Lucas* as requiring the State to show that even without sections 305A.7, 305A.9, and 716.5(2), the plaintiffs would not—under Iowa property law—have been able to construct a family residence on lot 15. The plaintiffs argue that because the State cannot make such a showing there has been a taking for which they should be compensated.

In addition, the plaintiffs believe that here a "taking" did not occur until the state archaeologist (1) made a significant find and (2) took action denying permission to disinter the human remains on lot 15. Because this did not happen until after the plaintiffs purchased the land, the plaintiffs argue there was a "taking" at that time. In support of their argument, the plaintiffs rely on language in *Lucas* that regulatory takings can

happen from a law or decree and that such regulatory action may well have the effect of eliminating the land's only economically productive use.

Apparently, then, the plaintiffs concede the sections in question and the state archaeologist's determination with respect to lot 15 advance a legitimate state interest. Whether there has been a taking in the *Lucas* sense depends on two things. The first is whether the plaintiffs are correct that the State must show that, without sections 305A.7, 305A.9, and 716.5(2), the plaintiffs would not under Iowa property law have been able to construct a family residence on lot 15. The second is whether the taking occurred when the plaintiffs claimed it did.

■ We do not interpret *Lucas* as restrictively as the plaintiffs do. Section 305A.7 was in existence and therefore part of Iowa's property law some twelve years before the plaintiffs purchased the land in question. Sections 305A.9 and 715.5(2) were in existence and therefore part of Iowa's property law some ten years before the plaintiffs purchased the land in question. So the "bundle of rights" the plaintiffs acquired by their fee simple title did not include the right to use the land contrary to the provisions of those three Iowa Code sections. Any prohibited use of lot 15 is directly attributable to the provisions of these three Code sections. The plaintiffs took title to the land in question subject to the provisions of these sections. These sections and their resulting prohibitions concerning the use of land ran— so to speak—with the land.

In addition, in *Lucas,* the regulation in question was passed *after* the plaintiffs acquired title. In contrast, here the statutes— sections 305A.7, 305A.9, and 715.5(2)—were in existence at least a decade before the plaintiffs acquired title. This is an important distinction.

■ More important, implicit in the Supreme Court's "bundle of rights" analysis is that the *right* to use the land in the way contemplated is what controls. Here, when the plaintiffs acquired title, there was no right to disinter the human remains and build in the area where the remains were located. For that reason, there was no taking when the state archaeologist made the significant find and took action denying permission to disinter the human remains. We find support for this conclusion in the following passage from *Lucas:*

> Where "permanent physical occupation" of land is concerned, we have refused to allow the government to decree it anew (without compensation), no matter how weighty the asserted "public interests" involved … though we assuredly *would* permit the government to assert a permanent easement that was a preexisting limitation upon the landowner's title. … We believe similar treatment must be accorded confiscatory regulations, i.e., regulations that prohibit all economically beneficial use of land: *Any limitation so severe cannot be newly legislated or decreed (without compensation), but must inhere in the title itself, in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership.* A law or decree with such an effect must, in other words, do no more than duplicate the result that could have been achieved in the courts—by adjacent landowners (or other uniquely affected persons) under the State's law of private nuisance, or by the State under its complimentary power to abate nuisances that affect the public generally, or otherwise.

*Lucas,* 505 U.S. at ——, 112 S.Ct. at 2900, 120 L.Ed.2d at 821 (citations omitted) (emphasis added). Here, at the time the plaintiffs acquired title, the State, under existing state law, could have prevented disinterment. This limitation or restriction on the use of the land inhered in the plaintiffs' title.

For all these reasons, there was—as a matter of law—no taking requiring payment of compensation. Because there was no fact issue on the issue of taking, the district court correctly sustained the State's motion for summary judgment.

**AFFIRMED.**

All Justices concur except SNELL, J., who dissents.

SNELL, Justice (dissenting).

I respectfully dissent.

This case is about whether the State of Iowa has the right to take a person's land and not pay for it. The majority opinion establishes the principle that the state can do that whenever it finds human bones over 150 years old buried on land that the state archaeologist declares has historical significance. I believe this is not the law of Iowa nor should it be.

The Fifth Amendment through the Fourteenth Amendment of the United States Constitution provides that the government shall not take private property for public use without just compensation. *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106, 111 (1980); *Bakken v. City of Council Bluffs*, 470 N.W.2d 34, 36 (Iowa 1991).

Iowa law has recognized the principle of inverse condemnation, when the government does not actually condemn property but its action amounts to the same thing. *Scott v. City of Sioux City*, 432 N.W.2d 144, 145 n. 1 (Iowa 1988). By establishing that an inverse condemnation has occurred, a property owner may recover just compensation. *United States v. Clarke*, 445 U.S. 253, 257, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373, 377 (1980). In this mandamus action plaintiffs do not seek to prevent the state from preserving the burial mound site for historical or scientific benefit. They claim only that they are entitled to compensation for the economic loss that befalls them from the state taking their property. I find their claim to be just and supported by law.

The trial court granted the State's motion for summary judgment and the majority affirms on the ground that plaintiffs cannot prevail as a matter of law. I believe this result occurs from a misapplication of the statutory and common law. I would reverse the decision granting the State's summary judgment and remand for entry of an order sustaining plaintiffs' summary judgment motion.

We have recognized the inevitable danger to private property that exists if the "just compensation" requirements of the Fifth Amendment to the federal Constitution and article I, section 18 of the Iowa Constitution could be circumvented through the guise of police power regulation. *Business Ventures, Inc. v. Iowa City*, 234 N.W.2d 376, 381–82 (Iowa 1975). Although not every police power regulation that restricts some beneficial use of property creates a compensable taking the frustration of investment-backed expectations may constitute a taking for which compensation is due. *Fitzgarrald v. City of Iowa City*, 492 N.W.2d 659, 665 (Iowa 1992) (citing numerous cases).

Lot 15, the burial mound area, is part of an investment-backed expectation of plaintiffs in developing a 59–acre tract for homes. It had been sold for $50,000 and is now worth $100 because nothing can be built on it. The State argues that the plaintiffs caused their own loss by buying property without recognizing a burial mound was on it that they could not use for home development. The State also promotes the idea that plaintiffs are undeserving of compensation because they made so much money selling other lots in the 59–acre tract that their loss of Lot 15 is but a fraction of their investment and therefore "de minimus." This patronizing view of entrepreneurship is unfounded in law and economic reality.

The majority result is premised on the law quoted from *Lucas v. South Carolina Coastal Council*, 505 U.S. ——, ——, 112 S.Ct. 2886, 2899, 120 L.Ed.2d 798, 820 (1992), and our state statutes. The language of the *Lucas* case relied upon is dictum expressing an undefined exception to the general rule that compensation must be paid for a taking. The holding of the *Lucas* case sustained the landowner's claim that a taking had occurred and rejected the State's argument that it owed no compensation because it was for the public benefit. The law established by *Lucas* actually supports the claim of plaintiffs in the case at bar. The Supreme Court in *Lucas* said:

> In general (at least with regard to permanent invasions), no matter how minute the intrusion, and no matter how weighty the public purpose behind it, we have required compensation.

*Id.* at ——, 112 S.Ct. at 2893, 120 L.Ed.2d at 812.

We think, in short, that there are good reasons for our frequently expressed belief that when the owner of real property has been called upon to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking.

*Id.* at ——, 112 S.Ct. at 2895, 120 L.Ed.2d at 815.

In the case of land, however, we think the notion pressed by the Council that title is somehow held subject to the "implied limitation" that the State may subsequently eliminate all economically valuable use is inconsistent with the historical compact recorded in the Takings Clause that has become a part of our constitutional culture.

*Id.* at ——, 112 S.Ct. at 2900, 120 L.Ed.2d at 820.

As we have said, a "State, by *ipse dixit,* may not transform private property into public property without compensation...."

*Id.* at ——, 112 S.Ct. at 2901, 120 L.Ed.2d at 823 (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 164, 101 S.Ct. 446, 452, 66 L.Ed.2d 358, 367 (1980)).

The prohibition by the State of Iowa from using the burial mound in the instant case is a complete taking because there is no practical use of it left to the plaintiffs. It is more insidious than zoning laws that we have held to effect a taking when they deny the economically viable use of the land. *See Agins,* 447 U.S. at 260, 100 S.Ct. at 2141, 65 L.Ed.2d at 112; *Osborn v. City of Cedar Rapids,* 324 N.W.2d 471, 474 (Iowa 1982); *Woodbury County Soil Conservation Dist. v. Ortner,* 279 N.W.2d 276, 278 (Iowa 1979). It is pernicious because there is virtually no notice to a landowner of the State's claim and no opportunity to review the government action or appeal to the courts.

The Iowa statutes cited as preventing full ownership of land containing a burial mound give no notice of the State's inchoate claim of authority to deny compensation while prohibiting use. *See* Iowa Code §§ 263B.7, 263B.9, and 716.5(2) (1993). Nor do they state or even imply that land with a burial mound bears a perpetual cloud on the title removable only by authority of the state archaeologist. Section 305A.9, giving the state archaeologist authority to deny permission to disinter human remains, is not a self-executing statute creating a covenant running with the land. By its own terms the statute is activated only by an application for permission to disinter. Moreover, there is no indication from the language of these statutes that the legislature intended to take property for historical or scientific inspiration without paying for it.

In this case, a dead bones doctrine has risen from the soil, like a phoenix, to consume the live marrow of land ownership. The history surrounding these ancient bones should be preserved by granting compensation for its resurrection.