CITY OF IOWA CITY, Iowa, and Iowa City Airport Commission, Appellants,

v.

HAGEN ELECTRONICS, INC., Appellee.

HAGEN ELECTRONICS, INC., Clarence Hagen, and Kenneth Hagen, Appellees,

v.

The CITY OF IOWA CITY, Iowa, and Johnson County, Iowa, Appellants.

No. 94–1427.

Supreme Court of Iowa.

March 20, 1996.

Rehearing Denied April 17, 1996.

David E. Brown of Hayek, Hayek, Brown & Engh, L.L.P., Iowa City, for appellants City of Iowa City, Iowa, and Iowa City Airport Commission.

J. Patrick White, County Attorney, for appellant Johnson County.

William L. Meardon of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellees.

Considered by MCGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

This is an appeal from a judgment entered for the landowner in an inverse condemnation action. Although the appeal raises multiple questions, our decision turns, ultimately, on the landowner's failure to exhaust administrative remedies. We, therefore, reverse.

## I. *Factual Background.*

In 1972, plaintiffs Hagen Electronics, Clarence Hagen, and Kenneth Hagen (hereinafter "Hagen") purchased a tract of unimproved land southwest of Iowa City in Johnson County, Iowa. The tract of approximately 1.47 acres adjoined Highway 1 and the Iowa City Municipal Airport. At the time Hagen purchased the property no airport zoning ordinance existed, but the property was (and still is) subject to federal regulations governing airports. The property remained undeveloped until 1985.

After years of study and planning, the city adopted a new airport master plan in 1982.

The plan substituted runway 6–24 for 17–35 as the airport's primary runway. The plan also called for a 1000′ extension of runway 6–24, thereby altering the approach slope to 34:1.[1] Hagen's property lies within the approach of runway 6–24.

The airport improvement project culminated in the adoption of a joint city-county airport ordinance in November 1984. The ordinance imposed use and height limitations on surrounding properties. Penetration of the new approach slope was prohibited. Under a 1990 amendment to the ordinance (adopted to reflect the fact that runway 6–24 was only extended by 355′, not the proposed 1000′) the maximum clearance above the Hagen property was approximately twelve feet.

The airport ordinance also established procedures for surrounding property owners to apply for building approval. Essentially, the ordinance required developers to notify the Federal Aviation Administration (FAA) by filing a federal form 7460-1 (notice of proposed construction). Under the ordinance, however, developers were not required to notify the FAA if the proposed structure would be "shielded by existing structures of a permanent or substantial character or by natural terrain or topographic features of equal or greater height...." Determinations on the question of "shielding" were left to local building officials. Developers proposing unshielded projects were required to obtain special exceptions or variances. The ordinance created an airport board of adjustment to hear such applications. To a large extent, the ordinance incorporated restrictions already contained in FAA regulations applicable to property surrounding the airport.

In 1985, Hagen contacted the Johnson County zoning administrator about developing his property. Advised that he would need airport approval, Hagen then discussed his development plans with airport manager Manfred Zahr. Zahr evidently told Hagen that the utility lines and power poles between Hagen's property and the runway did not

---

1. An approach slope is an imaginary plane that extends outward and upward beginning 200′ from the end of a runway. A 34:1 approach slope means that, for every thirty-four feet from its point of beginning, the slope elevates one foot. Thus, for example, a 34:1 approach slope is steeper (and less restrictive in terms of surrounding development) than a 40:1 approach slope.

constitute shielding. Hagen nevertheless applied for a building permit to operate a mobile home and satellite dish sales business. Zahr then advised the zoning administrator that (1) Hagen's proposed development penetrated the approach slope to runway 6–24 and (2) the FAA would not consider the utility lines and poles shielding.

Later, after Hagen advised Zahr that the proposed structure would only be seventeen feet high or less, Zahr again wrote to the zoning administrator, this time concluding that (1) the proposed development did not penetrate the approach slope but (2) Hagen still needed to file a 7460–1 notice with the FAA. Based on this advice, the county issued Hagen a building permit. Hagen also submitted a 7460–1 notice to the FAA. He immediately began to sell mobile homes and satellite dishes from his property.

About a month later Zahr reconsidered his calculations and realized a mistake had been made. The correct calculation reduced the clearance of the Hagen property from seventeen feet to only eight and one-half feet. Zahr then sent the zoning administrator a third memo, advising him to revoke Hagen's permit. Zahr anticipated that the FAA would object to Hagen's development because it penetrated the approach slope. As predicted, Hagen received such a letter from the FAA in mid-July 1985. Hagen, however, never contacted the FAA to question or appeal its objection to his proposal.

Thereafter the zoning administrator revoked Hagen's building permit. The notice informed Hagen that the permit had been originally issued on the basis of incorrect information. Hagen was directed to remove the mobile homes and satellite dishes from his property by November 15, 1985. The notice also informed Hagen of his right to appeal the decision to the airport board of adjustment. Hagen neither appealed the decision nor sought a variance. Instead he continued to use his property to sell mobile homes and satellite dishes.

## II. Procedural Background.

On February 26, 1986, the city petitioned the court to enjoin Hagen from using his property in violation of the airport ordinance. Hagen answered and counterclaimed, alleging that the airport zoning ordinance amounted to a taking of his property without just compensation as well as a violation of his civil rights entitling him to relief under 42 U.S.C. § 1983. The city replied, denying Hagen's allegations and arguing that Hagen had failed to exhaust his administrative remedies. Hagen thereafter amended his answer to include an inverse condemnation claim. In an amended reply, the city reasserted its argument that Hagen's claim was not ripe for review because he had failed to exhaust his administrative remedies. The case was continued pending this court's decision in *Fitzgarrald v. City of Iowa City*, 492 N.W.2d 659 (Iowa 1992), *cert. denied*, 508 U.S. 911, 113 S.Ct. 2343, 124 L.Ed.2d 253 (1993).[2]

Two years later, Hagen sued both the city and county alleging the airport ordinance constituted both a "taking" of his property without just compensation and a violation of his civil rights. He sought a declaratory judgment, attorney fees under 42 U.S.C. § 1988, and an injunction prohibiting enforcement of the ordinance against him. Hagen also claimed that the height restrictions imposed by the ordinance constituted a regulatory taking for which he was entitled to just compensation. He asked for a writ of mandamus directing the city and county to institute eminent domain proceedings for the condemnation of his property.

The city responded to Hagen's new lawsuit by dismissing its former injunction action without prejudice. The record reveals that the dismissal was based, at least in part, on the airport manager's revised opinion that the utility poles and lines surrounding Hagen's property did provide sufficient "shielding" to permit a structure like Hagen's to exist under the zoning ordinance. This belief

---

**2.** *Fitzgarrald* involved a mandamus action to compel condemnation brought by landowners who, like Hagen, owned property at the end of runway 6–24. *Fitzgarrald*, 492 N.W.2d at 661. The court denied plaintiffs' "taking" claim, find-

ing the plaintiffs' use of their property continued to be economically viable and any diminished market value resulting from the airport zoning ordinance was insufficient to support a finding that a regulatory taking occurred. *Id.* at 666.

stemmed from a field survey and further discussion with FAA officials. The city so advised Hagen and further informed him of his right to reapply for a building permit. Hagen never did so. The city meanwhile answered Hagen's new lawsuit, denying any "taking" or violation of Hagen's civil rights. Once again the city asserted its claim that Hagen had failed to exhaust his administrative remedies.

For its part, the county acted on Hagen's failure to pursue administrative relief by moving to dismiss the suit. The motion was denied and no appeal was taken from the ruling. The two cases were then consolidated for trial.[3] Pursuant to Hagen's motion, the parties agreed to bifurcate the issues for trial, litigating the takings and civil rights claims under the zoning ordinances and reserving the question of damages for a later date. Thus the record before us reflects the court's consideration of the following issues: (1) whether Hagen's claims were ripe for review, (2) whether the 1984 and 1990 airport ordinances constituted a "taking" of Hagen's property, and (3) whether the city's actions violated Hagen's civil rights under 42 U.S.C. § 1983.

On the exhaustion issue, the court ruled that the county's failure to appeal the denial of its motion to dismiss rendered the court's decision the "law of the case." Alternatively the court held that Hagen was not required to exhaust his administrative remedies because to do so would have been futile.

On the "takings" claim, the court concluded that the airport ordinances deprived Hagen of all economically beneficial use of his land. Finally, the court held that the city's actions regarding the shielding question were arbitrary and capricious, thereby depriving Hagen of substantive due process. This appeal by the city and county followed.

### III. Standard of Review.

■ An action to compel condemnation by way of mandamus is triable in equity. *Fitzgarrald,* 492 N.W.2d at 663. Our review on appeal is de novo. *Id.* Constitutional issues tried at law are also reviewed de novo. *Iowa Coal Mining Co. v. Monroe County,* 494 N.W.2d 664, 668 (Iowa), *cert. denied,* 508 U.S. 940, 113 S.Ct. 2415, 124 L.Ed.2d 638 (1993).

### IV. Analysis.

■ A. *Law of the Case.* Because the county did not appeal the earlier trial court decision overruling the county's motion to dismiss on exhaustion grounds, the district court believed the ruling became the "law of the case," binding on both defendants. Hagen now concedes error in the court's analysis. A court's ruling on a motion to dismiss "does not conclusively determine the merits of the issues presented in the petition." *City of Ankeny v. Armstrong,* 353 N.W.2d 864, 868 (Iowa App.1984). Thus the court's decision to overrule the motion to dismiss cannot be considered an adjudication for purposes of applying res judicata or "law of the case" principles to preclude further litigation on the merits of the controversy. *Id.*

B. *Exhaustion/Futility.* As an alternative to its "law of the case" analysis, the district court held Hagen could proceed to district court, without exhaustion of administrative remedies, because further administrative review would have been "fruitless." On appeal defendants contend the remedies available to Hagen would have been fruitful, not fruitless. We agree.

■ Generally a party must exhaust administrative remedies before resorting to litigation. *Riley v. Boxa,* 542 N.W.2d 519, 521 (Iowa 1996); *Continental Tel. Co. v. Colton,* 348 N.W.2d 623, 626 (Iowa 1984). Exception to the exhaustion requirement is permitted only when an administrative remedy is inadequate or its pursuit would be futile. *Alberhasky v. City of Iowa City,* 433 N.W.2d 693, 695 (Iowa 1988); *Matters v. City of Ames,* 219 N.W.2d 718, 719 (Iowa 1974).

■ Hagen readily concedes that he neither appealed the denial of a building permit to the zoning board of adjustment, nor applied for a variance. Likewise, he never challenged the FAA's initial response to his

---

**3.** All that remained of the city's original suit for injunction was Hagen's counterclaim which involved issues largely duplicated in Hagen's second suit.

development plans. The district court nevertheless excused Hagen's failure to pursue further administrative review on the belief that the FAA's stance relative to shielding was fixed. Moreover the court believed that Hagen should not be expected to squander his time and resources while the authorities debated the matter.

The court's reasoning on this point cannot bear scrutiny. The record reveals that other properties within the runway approach zone were granted special exceptions once modifications were made consistent with height restrictions and special lighting needs. Although Hagen relies heavily on the inability of one other landowner, S & M Properties, to obtain the necessary variances for development at the end of runway 6–14, we note that such development was far more extensive than that proposed by Hagen, involving a convenience store, gasoline pumps, and a residential area. Even if the proposals had been more similar, the bare assertion that an agency is predisposed to reach a certain conclusion does not thereby excuse the exhaustion requirement. *North River Ins. Co. v. Iowa Div. of Ins.*, 501 N.W.2d 542, 546 (Iowa 1993). "The futility exception is concerned with the adequacy of the remedy, not a perceived predisposition of the decisionmaker." *Id.*

Other evidence in the record leads us to conclude that the outcome at the administrative level may well have been different had Hagen pursued his available remedies. Concerning a different property, the FAA advised Hagen's counsel that "[u]nder no circumstances would we consider the power line as acceptable shielding for other structures." Upon inquiry by defendants, however, the FAA clarified that its statement was one of "general applicability" and "in actual practice, there are exceptions, as determined by the facts of each case." The letter closed by stating the agency "would be happy to review any proposal or alteration by any individual wishing to develop property which requires [FAA notification].... Each notice is studied on a case-by-case basis."

■ The United States Supreme Court has held that denial of permit approval is not equivalent to denial of a variance. *William-son County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 188–90, 105 S.Ct. 3108, 3117–18, 87 L.Ed.2d 126, 140–41 (1985). In the absence of proof that a landowner has pursued all statutorily available avenues for challenging zoning decisions, a reviewing court is in no position to determine whether the landowner has, in fact, been denied just compensation based on an alleged regulatory taking. *Bakken v. City of Council Bluffs*, 470 N.W.2d 34, 37 (Iowa 1991). That clearly is the situation here. As we recently noted in *Riley v. Boxa*, so long as the party still has an opportunity to vindicate rights in the administrative process, efficient judicial administration and principles of agency autonomy obligate courts to "stay their hand." 542 N.W.2d at 524. Restraint, in the end, may serve the salutary purpose of eliminating court involvement altogether. *Id.*

Because the court permitted Hagen to litigate his regulatory "taking" claims without first requiring him to exhaust administrative remedies, the judgment of the district court must be reversed.

■ C. *§ 1983 Claim.* Exhaustion of administrative remedies, however, is not a prerequisite to judicial determination of a § 1983 substantive due process claim. *Bakken*, 470 N.W.2d at 39. We therefore briefly address appellants' challenge to the court's finding that the city's pursuit of injunctive relief, denial of the permit, and subsequent reversal of position on shielding was so arbitrary and capricious that it deprived Hagen of substantive due process.

■ Zoning decisions "must not be arbitrary and capricious so as to amount to an abuse of governmental power." *Id.* at 38. However, "[a]n ordinance is valid if it has any real, substantial relation to the public health, comfort, safety, and welfare...." *Neuzil v. City of Iowa City*, 451 N.W.2d 159, 164 (Iowa 1990). A court must refrain from striking down a zoning ordinance solely because it adversely affects a property interest or prohibits the most beneficial use of property. *Id.* This rule also applies to amendments because "zoning is not static." *Id.*

The district court correctly stated the applicable test for a substantive due process violation:

> First, it must be determined whether there has been a deprivation of a federal constitutionally protected interest, and secondly, whether the deprivation, if any, is the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation.

*Bakken,* 470 N.W.2d at 38 (quoting *Rymer v. Douglas County,* 764 F.2d 796, 801 (11th Cir.1985)). To reach constitutional magnitude, deprivation of a property interest must be undertaken " 'for an improper motive and by means that were pretextual, arbitrary and capricious, and ... without any rational basis.' " *Id.* at 39 (quoting *Hearn v. City of Gainesville,* 688 F.2d 1328, 1332 (11th Cir. 1982)).

Assuming for the sake of argument that Hagen has shown a deprivation of his property rights, we find no support in the record for the second prong of the test. The city clearly had a rational basis for adopting and enforcing the airport zoning ordinance. The main provisions of the ordinance were adopted verbatim from federal regulations setting standards for airport runways. *See* 14 C.F.R. §§ 77.21, .23, .25. The ordinance's expressed purpose is public safety. Similarly, the city's position on shielding was at all times dictated by its understanding of FAA policy. Although the city revised its belief in that regard based on later conversation with FAA officials, Hagen has failed to show that the city's actions were taken for an improper or pretextual motive. Accordingly, we reverse the district court's ruling as it pertains to Hagen's § 1983 claim.

**REVERSED.**