# IN THE COURT OF APPEALS OF IOWA

No. 16-2138
Filed May 16, 2018

**HUNTER LANDING, LLC,**
    Plaintiff-Appellant,

**vs.**

**CITY OF COUNCIL BLUFFS, IOWA,**
    Defendant-Appellee.

_____

Appeal from the Iowa District Court for Pottawattamie County, Kathleen A. Kilnoski, Judge.

Hunter Landing, LLC, appeals from an adverse judgment in this inverse condemnation action. **REVERSED AND REMANDED FOR NEW TRIAL.**

James C. Webering of Webering Law Offices, P.C., Glenwood, and Ryann A. Glenn of Husch Blackwell LLP, Omaha, Nebraska, for appellant.

Jordan T. Glaser and Lyle W. Ditmars of Peters Law Firm, P.C., Council Bluffs, for appellee.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

The central question in this appeal is whether Hunter Landing, LLC, is entitled to a new trial because of a faulty jury instruction on inverse condemnation. Because we conclude the instruction was a misstatement of the law, we reverse and remand for a new trial.

**I. Background Facts and Proceedings.**

Hunter Landing, LLC (Hunter Landing) owns about twelve acres along the Missouri River near the City of Council Bluffs (City). Five houses, a duplex, and a mobile home existed on the acreage pursuant to a conditional-use permit issued to the prior owners, which allowed "weekend cabins and/or summer cottages."

In May 2011, a flood inundated the area, including the Hunter Landing property, resulting in a disaster proclamation by the Governor and a proposed buyout and destruction of flooded properties by the City (in large part with federal funds to be obtained via a Hazard Mitigation Grant Program Agreement). In September, the City's building inspector was able to gain entry onto the Hunter Landing property to inspect buildings for damage by the flood. The inspector declared six residential structures on the Hunter Landing property as "unsafe and unfit for human occupancy." Using a damage estimator provided by the Federal Emergency Management Agency, the inspector determined all but one residential structure was more than fifty percent damaged and, consequently, subject to demolition. After a review, one additional structure was found not to require demolition.

In December, the City notified Gail Hunter, as representative of Hunter Landing,

Please be advised that the City of Council Bluffs has performed site damage assessments to the property located at attached legal description, which was inundated by flood waters during the 2011 flood event. Structure(s) which you own in the area have been identified as having substantially damaged or destroyed structures and are classified as an imminent threat to the public health. These structures are hereby ordered condemned and to be demolished in accordance with the City Code.

Please be advised the City of Council Bluffs is giving you sixty (60) days from receipt of this notice to remove all residential structures from the property (see attached photo). If the residential structures are not removed in the time specified, the City will remove them from your property and bill you . . . .

The City demolished the condemned structures. During that process, subsurface equipment and structures were damaged or destroyed. Electrical lines were removed by the power company.

Two appraisals were prepared for the City in anticipation of offering to buy the Hunter Landing property. The average of the two appraisals found the preflood market value was $485,000. However, because the property was subject to four, 100-year leases and all the lessees would not voluntarily terminate their leases, the buyout did not occur.

After the 2011 flood, the City amended its floodway ordinance. With respect to future construction, the amended ordinance stated:

If any nonconforming use or structure is destroyed by any means, including flood, it shall not be reconstructed if the cost is more than fifty (50) percent of the market value of the structure before the damage occurred, unless it is reconstructed in conformity with the provisions of the Municipal floodway ordinance.

Hunter Landing brought this action against the City for inverse condemnation.[1]  After the presentation of evidence, the court proposed these jury instructions:

**INSTRUCTION NO. 14**

Hunter Landing claims the City of Council Bluffs inversely condemned its property by limiting the right of direct access to the property, restricting the highest and best use of the property, removing buildings, removing electrical power to operate a water well system, removing drainage tubes, and removing septic systems.

The City of Council Bluffs denies that it inversely condemned Hunter Landing property, denies that Hunter Landing has proven damages, and denies that Hunter Landing is owed any compensation.

If you determine that the City of Council Bluffs inversely condemned Hunter Landing property, you are to decide the amount of damage Hunter Landing has suffered which must be computed under the rules explained in these instructions.

**INSTRUCTION NO. 15**

Land-use regulation does not constitute inverse condemnation requiring compensation if it substantially advances a legitimate state interest.  There are two exceptions.  When the regulation (1) involves a permanent physical invasion of the property or (2) denies the owner all economically beneficial or productive use of the land, the State must pay just compensation.

When the regulation denies the owner all economically beneficial or productive use of the land, the City—under limited circumstances—may resist payment of compensation.  The limited circumstances include those instances where it can be shown that the property owner's property rights never included the right to use the land in the way the regulation forbids.  Whether or not the property owner's property rights included the right to use the land in the way the regulation forbids is to be determined under state nuisance and property law.

Hunter Landing objected, asserting Instruction 15 did not provide an adequate statement of inverse condemnation.  It argued,

[T]here is Iowa case law that indicates that even no matter how minor the invasion, a minor invasion by the government on a private

---

[1] Additional claims were also made but are not pursued on appeal.  Therefore, we limit our discussion to the one claim.

property owner's land is still actionable and compensatory, and so I think the language that involves a permanent physical invasion might be problematic based upon the Iowa law.

The court found that the "rest of the instructions" provided the jury "plenty of opportunity to decide the nuances on the kinds of damages that Plaintiff is seeking" and overruled the objection.

The jury found no inverse condemnation occurred and judgment for the City was entered. The court denied Hunter Landing's motion for new trial.

Hunter Landing appeals, contending Instruction 15 is a misstatement of law.

## II. Scope and Standard of Review.

We review challenges to jury instructions for correction of errors at law. *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016). "Reversal is warranted if the instructions have misled the jury. Prejudicial error occurs when the district court 'materially misstates the law.'" *Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 5 (Iowa 2009) (citations omitted).

## III. Preservation of Error.

We find Hunter Landing properly preserved error by its objection to Instruction 15. We acknowledge, as the dissent asserts, that counsel for Hunter Landing did not cite specifically to the *Penn Central* factors in the objection to the jury instruction. But it is not uncommon for an objection to be lodged without reference to a case cite or statute. What is required is that the objection be sufficiently specific to alert the district court to the basis of the complaint so that if there is error the court may correct it before submitting the case to the jury. S*ievers v. Iowa Mut. Ins. Co.*, 581 N.W.2d 633, 638 (Iowa 1998). Here, the district court made no further inquiry for legal support for the objection. We note that in its

resistance to the City's motion for summary judgment, Hunter Landing cited *Fitzgarrald v. City of Iowa City*, 492 N.W.2d 659, 664 (Iowa 1992), for the proposition that damages are proper for any permanent physical invasion and there is no de minimus rule. Moreover, *Fitzgarrald* cites *Penn Central*. *See* 492 N.W.2d at 663, 665. Thus, the district court judge—who was specially assigned to the case—should have been quite familiar with Hunter Landing's argument and the basis for the objection. *See Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 456 n.10 (Iowa 2016) (finding error preserved by general objection where the same issues were arged on motions for summary judgment and directed verdict and, thus, the issues were quite familiar to the district court judge).

## IV. Discussion.

"Inverse condemnation is 'a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted.'" *Hunziker v. State*, 519 N.W.2d 367, 369 (Iowa 1994), *abrogation recognized by City of Eagle Grove v. Cahalan Investments, LLC*, 904 N.W.2d 552, 563 n.14 (Iowa 2017) (citation omitted).

In *Brakke v. Iowa Department of Natural Resources*, 897 N.W.2d 522, 542 (Iowa 2017*)*, the supreme court explained:

> Under both the United States and Iowa Constitutions, the government is required to pay just compensation when it "takes" private property for public use. U.S. Const. amend. V; Iowa Const. art. I, § 18. The overarching purpose of the Takings Clause of the United States Constitution is "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Yancey v. United States*, 915 F.2d 1534, 1539 (Fed. Cir. 1990) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

The United States Supreme Court has recognized two different types of takings. The first type involves direct government seizure of property that amounts to "a practical ouster of [the owner's] possession." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005) (alteration in original) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 (1992)).

The second type of taking is a regulatory taking, which occurs "when the government regulates the use of property, through the exercise of its police power" and the regulation "goes too far." *Eagle Grove*, 904 N.W.2d at 562 (citations omitted).

There are three types of regulatory takings: (1) a per se taking arising from a permanent physical invasion of property, (2) a per se taking arising from regulation that denies the owner all economically beneficial ownership, and (3) a regulatory taking based on the balancing of the three *Penn Central* [*Transportation Co. v. New York City*, 438 U.S. 104 (1978)] factors.

*Id.* (quoting *Brakke*, 897 N.W.2d at 545 (alteration in original)). The three *Penn Central* factors are (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) the "character of the government action." 438 U.S. at 124; *see Eagle Grove*, 904 N.W.2d at 562 n.13.

At trial, the district court instructed the jury only as to the per se takings noted in *Brakke*. The jury was not instructed on the third type of regulatory taking involving the *Penn Central* factors. The court erred in so instructing the jury. *See Weyerhaeuser Co. v. Thermogas Co.*, 620 N.W.2d 819, 823-24 (Iowa 2000) ("Parties are entitled to have their legal theories submitted to the jury if they are supported by the pleadings and substantial evidence in the record." (citation

omitted)).  The instructional error was compounded when the City, in closing argument stressed:

> The burden of proof here is on [Hunter Landing], not on the [City].  They have to prove by a preponderance of the evidence that the City took Mr. Hunter's land or deprived him of any [use] for inverse condemnation, which is what they're saying, we took his land, they—[Hunter Landing] has to prove that there was a permanent physical invasion of the property or denies the owner all economically beneficial or productive use of the land.

Without instruction on the third type of regulatory taking, the court denied Hunter Landing of having the jury consider its theory of recovery.  Moreover, the court erred in conflating "the kinds of damages that [Hunter Landing] is seeking" with its legal theory.  Contrary to the district court's belief that the jury could discern the damages sought by Hunter Landing, the jury could not reach the issue of damages without first determining that Hunter proved inverse condemnation.  Under the instruction given, the jury could not find any City action short of "a permanent physical invasion" or a denial of "all economically beneficial ownership" constituted a taking.  *Cf. Kelley v Story Cty. Sheriff*, 611 N.W.2d 475, 480 (Iowa 2000) (noting "[t]he point at which police power becomes so oppressive that it results in a taking is determined on a case-by case basis" and discussing the "ad hoc approach applies a balancing test that is essentially one of reasonableness, which asks whether the collective benefits of the regulatory action outweigh the restraint imposed upon the property owner" (citation omitted)).

We are not persuaded by the City's assertion that Instruction 14 addressed this deficiency.  In fact, Instruction 14 does nothing but set forth Hunter Landing's

allegation[2] and the City's denial of wrongdoing.  Nothing in the jury instructions can be read to allow the jury to find a regulatory taking had occurred where Hunter Landing did not show a permanent physical invasion or a denial of *all* economically beneficial ownership.  We reverse and remand for a new trial.

**REVERSED AND REMANDED FOR NEW TRIAL.**

Mullins, J., concurs; McDonald, J., dissents.

---

[2] The City quotes this portion of the instruction: "Hunter Landing claims the City of Council Bluffs inversely condemned its property by limiting the right of direct access to the property, restricting the highest and best use of the property, removing buildings, removing electrical power to operate a water well system, removing drainage tubes, and removing septic systems."

**MCDONALD, Judge** (dissenting)

I respectfully dissent. "Iowa law requires a court to give a requested jury instruction if it correctly states the applicable law and is not embodied in other instructions." *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016). Here, the plaintiff did not request an instruction regarding a regulatory taking under the *Penn Central* factors. Nor did the plaintiff make an objection to the instruction on the basis that it failed to encompass a regulatory taking under the *Penn Central* factors. Instead, the plaintiff raised a single issue related to de minimis physical invasions:

> My *only* issue with the instruction, Your Honor, is that there is Iowa case law that indicates that even no matter how minor the invasion, a minor invasion by the government on a private property owner's land is still actionable and compensatory, and so I think the language that involves a permanent physical invasion might be problematic based upon the Iowa law.

(Emphasis added.) The district court did not err in declining to give the requested instruction, and the defendant failed to preserve error on the issue reached by the majority. *See* Iowa R. Civ. P. 1.924 ("Within such time, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal."); *Shams v. Hassan*, 905 N.W.2d 158, 168 (Iowa 2017) (stating the party must specify the grounds for the objection). I would affirm the judgment of the district court.